UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF TRANSPORTATION,<br><br>Defendant. | Case No. C08-5722RJB<br><br>ORDER ON COUNTERCLAIM-DEFENDANT THE UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS |

This matter comes before the court on Counterclaim-Defendant The United States' Motion for Partial Judgment on the Pleadings. Dkt. 24. The court has considered the relevant documents and the remainder of the file herein.

FACTUAL BACKGROUND

The following facts are alleged in the complaint filed by the United States and in the answer and counterclaim filed by the Washington State Department of Transportation (WSDOT):

The area concerned in this litigation is the Commencement Bay-Nearshore Tideflats Superfund Site (the Site) in Tacoma, Washington. The Site consists of several identified problem areas where hazardous substances have contaminated sediment, including the Thea Foss and Wheeler Osgood waterways. Dkt. 1 ¶¶ 11-18. Due to the level of contamination in the water and sediment, the Site was placed on the first official National Priorities List of hazardous waste sites pursuant to CERCLA § 105, 42 U.S.C. § 9605. Dkt. 1 ¶ 13.

In approximately 1983, WSDOT began construction of the highway connector I-705 in Tacoma, Washington; a significant portion of the right of way for I-705 lies within the Site. Dkt. 1 ¶¶ 22, 24. Incidental to the construction of I-705, WSDOT constructed a city street (South A Street) underneath I-705 that connected Dock Street to A Street. Dkt. 1 ¶ 25. While drilling to assess foundation requirements for construction of the highway, a WSDOT sub-contractor discovered a tar-like substance in the soil, and further excavation revealed the remains of three open bottom tanks containing tar. The tanks were likely deposited there by a coal gasification plant that had operated at the location until 1924. Dkt. 1 ¶ 26. The tar and tar-like materials discovered were found to contain hazardous substances identified as polycyclic aromatic hydrocarbons (PAHs). Dkt. 1 ¶ 27. After determining that a portion of the construction site was contaminated, WSDOT collaboratively sought to clean up the contaminated soil and then finished construction of the I-705 and South A Street. Dkt. 10 ¶¶ 28-29.

In 1989, the United States, through the Environmental Protection Agency (EPA), contacted 133 potentially responsible parties (PRPs), including WSDOT, to begin directing remedial actions and recouping response costs associated with the Site. Dkt. 1 ¶ 41. In May of 2003, the United States entered into consent decrees with over eighty PRPs (but not WSDOT) to provide funding and remedial action to facilitate clean-up of the Site. Dkt. 1 ¶ 20. The United States alleges that, as of June 30, 2008, it has incurred at least $6.8 million in unreimbursed response costs in association with the Thea Foss and Wheeler Osgood Waterways, and that response costs will continue to mount in the future. Dkt. 1 ¶ 44.

In February of 2009, WSDOT was sued in Washington State Superior Court by two companies under the Washington State Model Toxics Control Act (MTCA), Wash. Rev. Code 70.105D. *See PacifiCorp Envtl. Remediation Co. v. Dep't of Transp.*, No. 07-2-10404-1 (Wash. Sup. Ct. July 31, 2009). The state court ordered WSDOT to pay a percentage of past and future remedial clean-up costs for the Thea Foss and Wheeler Osgood Waterways. *Id*.

Before the state trial started, the United States filed the present complaint against WSDOT in this court for recovery costs under 42 U.S.C. § 9607. Dkt. 1. The United States alleges that WSDOT is liable to the United States for past and future response costs incurred in connection with the Thea Foss and Wheeler Osgood waterways at the Site. Dkt. 1 ¶¶ 47-56. Additionally, the United States seeks a declaratory judgment under 42 U.S.C. § 9613(g)(2), that WSDOT is jointly and severally liable for any

future response costs incurred by the United States in connection with the Site. Dkt. 1 ¶ 57.

## COMPLAINT AND COUNTERCLAIMS

On December 2, 2008, the United States filed this complaint against WSDOT under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, *et seq*, to recover its un-reimbursed costs incurred in response to releases and threatened releases of hazardous substances at the Site. Dkt. 1.

On February 6, 2009, WSDOT filed an answer and counterclaim against the United States. The counterclaim seeks contribution from the United States, pursuant to 42 U.S.C. § 9613(b) and (f) (CERCLA § 113), contending that (1) the United States Army Corps of Engineers (USACE), an agency of the United States, dredged the bottom of the Thea Foss waterway from 1902 until 1949, and permitted public and private entities to dredge the Thea Foss waterway between 1975 and 1983 and possibly in 1912 and 1915, thereby moving hazardous substances released by others and causing additional releases to the environment near the waterways; (2) until 1924, the USACE used the dredged material, which included hazardous substances, as fill near the waterways; (3) beginning in 1924, the USACE deposited the dredged material in Commencement Bay, further spreading the contaminated materials; (4) at least until 1940, the USACE deposited the dredged materials at a location near the mouth of the Thea Foss waterway, where it could easily re-enter and re-contaminate the waterway; and (5) WSDOT incurred costs of response for the Thea Foss site. Dkt. 10 at 15-18. WSDOT further alleges that the United States is liable to WSDOT for contribution under 42 U.S.C. § 9613(f) because the USACE meets the requirements of an "operator" under 42 U.S.C. § 9607(a)(2), an "arranger" under § 9607(a)(3), and a "transporter" under 42 U.S.C. § 9607(a)(4). Dkt. 10 at 19.

## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

The United States filed this motion for partial judgment on the pleadings in July 2009, after the Washington State Superior Court judgment (the State Judgment) against WSDOT had been announced. The United States argues that portions of the counterclaim by WSDOT must fail as a matter of law. First, the United States asserts that WSDOT has failed to meet the procedural requirements to bring a CERCLA contribution claim under 42 U.S.C. § 9613. Second, the United States asserts that WSDOT's counterclaim attempts to receive contribution for the State Judgment, and that CERCLA does not allow

such a claim. Third, the United States asserts that it cannot be held liable for a purely regulatory activity such as permitting third parties to dredge waterways within the Site.

WSDOT responds to the United States' motion for partial judgment on the pleadings by arguing that it has met all procedural requirements of CERCLA, and that there is no statutory bar to claiming contribution for a judgment entered in state court. WSDOT further argues that the USACE exercised considerable control over the waterways within the Site, and that such control subjects the United States to liability for permitting third parties to dredge.

Although neither WSDOT's counterclaim for contribution or the United States' answer mentions the State Judgment, the briefings from both parties make it evident that the primary issue is whether WSDOT may seek contribution here for the judgment against them in Washington Superior Court.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(c) undergoes the same scrutiny as a motion to dismiss under Fed. R. Civ. P. 12(b). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). To overcome a motion to dismiss under Fed. R. Civ. P. 12(b), the non-moving party must plead sufficient facts to provide the grounds for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While such pleading need not contain factually detailed allegations, the facts included must be sufficient to elevate the assumption of a right to relief above mere speculation. *Id*. Accordingly, a claim has facial plausibility when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Under Fed. R. Civ. P. 12(d), a court may consider material outside the pleadings. In such a case, Fed. R. Civ. P. 56 governs the motion and it is treated as one for summary judgment. When considering matters outside the pleadings, the court must allow reasonable opportunity for all parties to present material pertinent to the motion. Fed. R. Civ. P. 12(d). However, a court may properly look beyond the complaint to matters of public record and in so doing does not convert a motion to dismiss to one of summary judgment. *Gemtel Corp. v. Community Redevelopment Agency*, 23 F.3d 1542, 1544, n.1 (9th Cir. 1994).

The United States attached a copy of the State Judgment to its brief in support of the motion. Dkt.

24, app. A. Despite objecting to the inclusion of non-pleading materials for review, WSDOT likewise attached an affidavit from its counsel in the state trial to be considered if this court allows non-pleading materials. Dkt. 32. Orders from Washington Superior Court are matters of public record, and consideration of the judgment in WSDOT's case would not convert this motion to one of summary judgment. Nonetheless, because this motion does not require information from either attached document, the court did not consider any materials other than the pleadings. Consequently, the standard applied is the same as a motion to dismiss under Fed. R. Civ. P. 12(b).

## STATUTORY SCHEME

In 1980, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), as amended, 42 U.S.C. § 9601 *et seq.*, in an effort to mitigate the effects of industrial pollution by promoting hazardous waste site clean-up and by transferring clean-up costs onto parties responsible for the contamination. *Burlington Northern & Santa Fe Ry Co. v. United States*, 129 S. Ct. 1870, 1874 (2009). CERCLA accomplishes these goals by imposing strict liability on four classes of persons identified as potentially responsible parties (PRPs). *Id.* at 1878. To be considered a PRP, the party must be

> 1) the owner or operator of a vessel or a facility,
>
> 2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> 3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> 4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance....

42 U.S.C. § 9607(a)(1)-(4). A "person" under CERCLA includes individuals, corporations, partnerships, municipalities, state governments, or the United States government. 42 U.S.C. § 9601(2).

CERCLA provides two remedial procedures. First, PRPs can be held liable to a party that incurs response costs under 42 U.S.C. § 9607(a). PRPs are liable for

> 1) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

> 2) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
>
> 3) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
>
> 4) the costs of any health assessment or health effects study carried out....

42 U.S.C. § 9607(a)(4)(A)-(D). Second, and distinct from the previous procedure, PRPs may claim contribution under 42 U.S.C. § 9613(f)(1) either during or following an action instituted against them under § 9606 or § 9607(a), or under 42 U.S.C. § 9613(f)(3)(B) if they have resolved liability to the United States through settlement. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 163 (2004).

Under CERCLA, the President is authorized to order remedial action that is consistent with the National Contingency Plan to arrange for the removal of hazardous substances that have been released into the environment. 42 U.S.C. § 9604(a)(1). To recover its costs for engaging in these response actions, the United States must prove as follows: (1) the site at which the actual or threatened release of hazardous substances occurred constitutes a "facility" under 42 U.S.C. § 9601(9); (2) there was a "release" or "threatened release" of a hazardous substance; (3) the party is within one of the four classes of persons subject to liability under 42 U.S.C. § 9607(a); and (4) the United States incurred response costs in responding to the actual or threatened release. *United States v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998).

## ANALYSIS

### I. CERCLA Claim for Contribution

#### A. Procedural Requirements

Both parties agree that *United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007), stands for the proposition that a party may bring a § 9613(f) claim for contribution only after being sued for cost recovery under § 9606 or § 9607(a). *Id.* at 138. Here, the United States sued WSDOT for cost recovery under § 9607(a) for the response costs associated with the Site. WSDOT counterclaimed for contribution against the United States for a portion of the response costs that the United States is seeking from WSDOT in this action and for a portion of the costs assessed against WSDOT in the State Judgment. WSDOT concedes that contribution is not available to it under 42 U.S.C. § 9613(f)(3) because WSDOT has never entered into a settlement agreement regarding this clean-up. Because WSDOT filed its

counterclaim against the United States during the underlying § 9607(a) suit, it satisfies the minimal procedural requirements of CERCLA under § 9613(f)(1). The only issue, then, is whether 42 U.S.C. § 9613(f)(1) prohibits or impliedly allows contribution for a judgment other than the one levied in the initiating CERCLA action.

### B. Contribution for the State Judgment

WSDOT argues that a claim for contribution is not limited exclusively to liability that is established in the underlying CERCLA action. However, the language of *Atlantic Research* implies otherwise. "Section [9613(f)(1)] authorizes contribution action to PRPs with common liability stemming from an action instituted under [§ 9606 or § 9607(a)]." *Atlantic Research*, 551 U.S. at 139. The description of "common liability" which stems from the same action implies that the liability susceptible to contribution can only be liability apportioned in a § 9606 or § 9607(a) suit. *Atlantic Research* does not address the issue of whether the common liability shared among PRPs may be established anywhere other than a suit under § 9606 or § 9607(a) or by settlement with the United States in accordance with 42 U.S.C. § 9613(f)(3)(B). Therefore, the only liability for WSDOT that may be found in this court is a duty to reimburse the United States for the claimed response costs under § 9607(a); there is no other "common liability" to apportion.

Acknowledging that *Atlantic Research* does not expressly allow such a claim, WSDOT argues that a contribution claim for a judgment other than one entered under § 9606 or § 9607(a) is also not expressly disallowed. WSDOT attempts to distinguish between the substantive and procedural requirements of CERCLA, arguing that the plain text of § 9613(f) imposes only the procedural requirement that a PRP claiming contribution first be sued under § 9606 or § 9607(a). However, this argument cannot withstand scrutiny. If CERCLA imposed only the procedural requirement offered by WSDOT, and allowed substantive claims to proceed regardless of a finding of common liability in the underlying action, then PRPs could claim contribution for any manner of tort damages, perhaps not even related to environmental clean-up. Such a reading would eviscerate the intent of § 9613 in allowing claims for contribution.

Not finding support within the statute itself, WSDOT additionally points to two occasions where *Atlantic Research* refers to parties attaining contribution for a "court judgment." Describing the procedural posture for a party that may bring a claim for contribution, the Court states that "a PRP that

pays money to satisfy a settlement agreement or a court judgment may pursue [42 U.S.C. § 9613(f)] contribution." *Id.* at 139. Similarly, the Court later states that "costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under [42 U.S.C. § 9613(f)]." *Id.* at 139 n.6. In both instances, *Atlantic Research* is distinguishing between claims that may proceed under 42 U.S.C. § 9607(a) and § 9613(f) based on the type of costs that the PRP has incurred. Nothing in *Atlantic Research* suggests that the Court meant anything other than a legal judgment entered under § 9607(a) (noting that CERCLA allows § 9613(f) contribution claims to proceed during or *following* a suit under § 9606 or § 9607). Reading "judgment" to mean anything else would unnecessarily broaden the scope of CERCLA contribution claims.

The Supreme Court apparently intended *Atlantic Research* to resolve confusion over how CERCLA contribution claims should be filed. *Id.* at 133. A narrow reading of the decision comports with that intent. Rather than opening 42 U.S.C. § 9613(f) to claims of contribution for any possible adverse judgment against the claimant, the Court's holding in *Atlantic Research* is consistent with the United States' argument in this motion. If a PRP proves a contribution claim under 42 U.S.C. § 9613(f), the award is limited to an equitable portion of the liability assigned to the PRP in the underlying CERCLA action under § 9606 or § 9607(a).

It is worth noting that the MTCA allows claims for contribution in much the same manner as CERCLA. Under Wash. Rev. Code § 70.105D.080, a person may bring a claim for contribution against any other person liable under the Act for remedial action costs or natural resource damages paid to the state. WSDOT apparently did not succeed with a contribution claim during the state trial, which may be attributed to a procedural bar, a ruling from the trial judge, a tactical decision, or an oversight by counsel. If there were a reason, meritorious or procedural, that contribution was precluded in the state trial, the proper venue to address it now is the state appellate court. This court will not retry a state lawsuit, particularly one pending appeal, to consider liability for an entity that was not a party to the state suit, and WSDOT has failed to show any compelling reason why CERCLA now opens that door. Therefore, the United States' motion to dismiss the counterclaim for contribution based upon the judgment against WSDOT in the State Judgment should be granted.

C. "Contribution for Contribution"

Even if WSDOT's counterclaim satisfied the procedural requirements of CERCLA, and CERCLA allowed for contribution for a judgment other than one entered under § 9607(a), the United States argues that the counterclaim fails in that it seeks "contribution for contribution." Dkt. 24 at 8-11. WSDOT counters that the damages levied in the State Judgment are more than its equitable share, implying that the judgment is for more than contribution. Dkt. 31 at 10-12.

Contribution under § 9613(f)(1) is "contingent upon an inequitable distribution of common liability among liable parties." *Atlantic Research*, 551 U.S. at 138. Therefore, contribution awards are based on a balancing of equities and an understanding that parties should be held responsible only for their fair share. The United States cites to *Atlantic Research*, *Black's Law Dictionary* 353 (8th ed. 1999), Restatement (Third) of Torts: Apportionment of Liab. § 23 (2000), and Restatement (Second) of Torts § 886A(2) (1977), to support the proposition that contribution is, by default, indivisible because it has already been equitably apportioned. WSDOT does not specifically challenge this argument, but rather argues that the State Judgment in fact was an inequitable result for WSDOT. This court need not reach the question of "contribution for contribution."

The United States would have the court determine as a matter of law that the State Judgment entered against WSDOT was a contribution judgment precluding WSDOT from any relief; WSDOT would have the court determine as a matter of law that the State Judgment unfairly burdens WSDOT with an inequitable share of clean-up costs. To make either determination would require review of the state trial and judgment, including a review of what the trial judge considered in assessing damages. Because apportioning damages includes equitable considerations, this would require opening a significant portion of the evidence from the state trial and essentially conducting a de novo review. Conducting such an investigation would be inappropriate in this venue under these circumstances.

Furthermore, as stated above, such an investigation into the State Judgment would be fruitless to WSDOT's counterclaim because CERCLA limits claims for contribution by restricting recovery to the portion of "common liability" that stems from the same § 9606 or § 9607(a) action. Even if the court were to determine that the State Judgment inequitably apportioned clean-up costs, for more than WSDOT's portion of liability, a contribution claim for a damages judgment from another proceeding simply is not statutorily available through CERCLA.

This finding seems to be in line with the intent of CERCLA. CERCLA is intended to promote settlement and to encourage voluntary actions to clean-up contaminated sites. *See Burlington Northern & Santa Fe Ry Co. v. United States*, 129 S. Ct. 1870, 1874 (2009). Withholding WSDOT's contribution claim on the facts presented here does not reduce the effectiveness of that policy; in fact, it improves it. WSDOT finds itself in the current situation largely because it chose not to enter a consent decree with the EPA to engage in clean-up efforts years ago. In addition to being protected from § 9607(a) actions as a party to a settlement under § 9607(b), any portion of clean-up costs that WSDOT may have voluntarily undertaken over its fair share could have been recovered under § 9607(a). *See Atlantic Research*, 551 U.S. at 139.

## *II. USACE's Liability Under CERCLA*

The United States challenges the portion of WSDOT's claim for contribution regarding the USACE's involvement in permitting third parties to dredge the Thea Foss waterway between 1975 and 1983. Dkt. 24 at 11-16. The United States contends that granting permits is purely a regulatory government function, and one that cannot impose liability. *Id*. WSDOT responds that the USACE acted as either an operator or arranger by exercising significant authority and control over the waterway during the times when third parties were permitted to dredge. Dkt. 31 at 13.

The court does not address USACE's potential liability as an operator, because it finds sufficient basis to defeat a Fed. R. Civ. P. 12(c) motion to dismiss on arranger liability. The United States predominantly relies on two cases–*Burlington Northern & Santa Fe Ry Co. v. United States*, 129 S. Ct. 1870 (2009), and *United States v. Shell Oil Co.*, 294 F.3d 1045 (9th Cir. 2002)–as authority that arranger liability does not apply to the USACE. Both comparisons are incomplete. These two cases, and the cited cases therein, discuss arranger liability in the context of the manufacturing, sale, and eventual disposal of hazardous chemicals. The determinative issue in assigning liability in those cases focuses on possession of the hazardous waste either as the manufacturer or the end-state consumer. Here we have a different scenario, where USACE's liability, if any, will not be based on actual possession of the waste but rather on what level of involvement the USACE engaged in when granting permits for dredging and disposing of dredged materials.

In fact, *Shell Oil* explicitly states that there is no bright-line test to determine when a party is

subject to arranger liability, but considers control of the waste as a crucial element in the decision process. 294 F.3d at 1055. While it is true that the ability to exercise control over the waste may not be sufficient to impose arranger liability on its own, if there is also an obligation to manage waste disposal then there may be liability. *Id.* at 1057-58. At this point, the facts are insufficiently developed to determine what level of control USACE exerted over the dredging process and what responsibility it may have held regarding disposal of the dredged materials.

Furthermore, at this point it is unclear whether USACE's involvement in dredging the waterway can be described as purely regulatory activity, particularly in light of the USACE's previous role in actually conducting dredging operations. Because the exact role of the USACE in dredging the waterways and disposing of the dredging materials between 1975 and 1983 is unclear, further discovery is warranted to determine if liability under 42 U.S.C. § 9607 is applicable.

As the Supreme Court stated in *Burlington Northern*, "the determination whether an entity is an arranger requires a fact-intensive inquiry that looks beyond the parties' characterization of the transaction as a 'disposal' or 'sale' and seeks to discern whether the arrangement was one Congress intended to fall within the scope of CERCLA's strict-liability provisions." 129 S. Ct. at 1879. Considering the USACE's involvement with dredging the contaminated waterways in light of CERCLA's strict liability standard, the court cannot say as a matter of law that upon further discovery, the facts will fail to show that the USACE "qualif[ies] as an arranger under [§ 107(a)(3) when taking] intentional steps to dispose of a hazardous substance" through the granting of permits to dredge the waterway. *Id*.

Lastly, the court is not persuaded that WSDOT's counterclaim lacks specificity under the standard crafted in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), whereby a party must plead sufficient facts to provide the grounds for entitlement to relief in order to overcome a motion to dismiss under Fed. R. Civ. P. 12(b). *Id.* at 555. At this early stage of pleading, WSDOT has sufficiently alleged that the role of the USACE creates an inference of a right to relief that rises above mere speculation. It is possible that summary judgment may be appropriate at a future date, but at present the claim may proceed.

### III. Collateral Estoppel

In its reply brief on the motion, the United States raises the issue of collateral estoppel in an attempt to preclude WSDOT from challenging the State Judgment. Dkt. 40 at 2-6. In accordance with

Local Court Rule 7, WSDOT filed a surreply seeking to strike the portion of the United States' reply brief arguing collateral estoppel because it was not argued in the motion brief or raised in WSDOT's response brief. Dkt. 41. Analysis of collateral estoppel is unnecessary to determine the outcome of this motion to dismiss, and the court did not consider collateral estoppel here. Nonetheless, the argument was first raised in the reply brief and should be stricken.

## CONCLUSION

On its surface, most of WSDOT's counterclaim is sound. The claim for contribution based on USACE's dredging activities between 1902 and 1949 is not challenged. There are sufficient facts to warrant continued discovery on the role of the USACE in permitting third parties to dredge the waterways at the Site between 1975 and 1983 to determine what portion, if any, of WSDOT's liability under 42 U.S.C. § 9607 may be attributable to the United States. However, to the extent that the counterclaim attempts to recover any contribution for the State Judgment against WSDOT, the motion to dismiss should be granted.

Therefore, it is hereby

**ORDERED** that Counterclaim-Defendant The United States' Motion for Partial Judgment on the Pleadings is GRANTED in part and DENIED in part as follows:

1. The United States' motion to dismiss as to that portion of WSDOT's counterclaim that seeks contribution from the United States for costs assessed in the State Judgment is GRANTED, and that portion of the counterclaim is DISMISSED;

2. The motion to dismiss as to that portion of WSDOT's counterclaim for contribution under § 9613(f)(1) for response costs the United States is seeking against WSDOT under § 9607(a) is DENIED, and that portion of the counterclaim may proceed;

3. Counterclaim-Plaintiff WSDOT's Motion to Strike Portions of Counterclaim-Defendant The United States' Reply arguing collateral estoppel is GRANTED.

///
///
///
///

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 15th day of September, 2009.

*Robert J. Bryan*
Robert J. Bryan
United States District Judge