HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 3:08-cv-05722RJB |
| Plaintiff and Counterclaim Defendant | PLAINTIFF UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY RE: COAL TAR CONTAMINATION |
| vs. | |
| WASHINGTON STATE DEPARTMENT OF TRANSPORTATION | ORAL ARGUMENT REQUESTED |
| Defendant and Counterclaimant. | NOTE ON MOTION CALENDAR: June 18, 2010 |

PLAINTIFF THE UNITED STATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY
08CV5722

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

# TABLE OF CONTENTS

STATUTORY BACKGROUND..............................................................................2

STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................3

    The CB/NT Superfund Site ........................................................................4

    WSDOT's Ownership and Operation of the Tacoma Spur Property.............. 5

    Enforcement Background and State Court Litigation....................................11

SUMMARY JUDGMENT STANDARD............................................................13

ARGUMENT .................................................................................................13

    I.  THE UNDISPUTED FACT ESTABLISH WSDOT'S LIABILITY UNDER
        SECTION 107(a)(1) AND 107(a)(2)...................................................13

          A.  WSDOT Owns Land Within a Superfund Site. ...........................14

          B.  WSDOT Owned and Operated Land Within the
              Commencement Bay Site at the Time of Disposal of Hazardous Substances.....16

          C.  WSDOT's Affirmative Defenses Are Legally Insufficient.........................17

              1.  WSDOT Cannot Establish the Third Party Defense.........................18

              2.  WSDOT Cannot Establish the "Contiguous Properties" Exception to
                  Owner/Operator Liability.................................................................20

    II.  WSDOT IS PRECLUDED FROM RELITIGATING ISSUES IT HAS ALREADY
        TRIED AND LOST IN STATE COURT.....................................................21

CONCLUSION.............................................................................................24

PLAINTIFF THE UNITED STATES' MOTION FOR      UNITED STATES DEPARTMENT OF JUSTICE
PARTIAL SUMMARY JUDGMENT ON LIABILITY     Environment and Natural Resources Division
08CV5722  - ii-                                P.O. Box 7611, Washington, D.C. 20044-7611

**TABLE OF AUTHORITIES**

**Federal Cases**

Acme Printing Ink Co. v. Menard, Inc., 870 F. Supp. 1465 (E.D. Wis. 1994)..........................- 19 -

Albano v. Norwest Financial Hawaii, Inc.,

    244 F.3d 1061, cert. denied, 122 S. Ct. 505 (2001) ...................................................- 22 -, - 23 -

Allen v. McCurry, 449 U.S. 90 (1980) ...............................................................................- 22 -

Am. Nat. Bank & Trust of Chicago v. Harcros Chems., Inc.,

    No. 95C3750, 1997 WL 281295 (N.D. Ill. May 20, 1997) ...................................- 13 -

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)............................................- 13 -

Axel Johnson v. Carroll Carolina Oil Co., Inc., 191 F.3d 409 (4th Cir. 1999)........................- 15 -

Burlington N.R.R. v. Woods Indus., Inc., 815 F. Supp. 1384 (E.D. Wash. 1993) ...................- 17 -

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ................................................- 13 -, - 18 -

Foster v. United States, 922 F. Supp. 642 (D.D.C. 1996)................................................- 21 -

Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.,

    240 F.3d 534 (6th Cir. 2001) ...................................................................- 19 -

Friends of Earth v. Hall, 693 F. Supp. 904 (W.D. Wash. 1988)................................- 23 -

Idaho v. Hanna Mining Co., 882 F.2d 392 (9th Cir. 1989) ..........................................- 3 -

Idylwoods Assocs. v. Mader Capital, Inc., 956 F. Supp. 410 (W.D.N.Y. 1997)......................- 19 -

In re Diamond, 285 F.3d 822 (9th Cir. 2002) ..............................................................- 22 -

In re Hemingway Trans., Inc. v. Kahn, 174 B.R. 148 (Bankr. D. Mass. 1994).......................- 21 -

Kaiser Aluminum Chem. Corp. v. Catellus Dev. Corp.,

    976 F.2d 1338 (9th Cir. 1992) ...................................................................- 16 -

Lewis Operating Corp. v. United States, 533 F. Supp. 2d 1041 (C.D. Cal. 2007) ...................- 19 -

Louisiana-Pacific Corp. v. Beazer Materials & Servs., Inc.,

    811 F. Supp. 1421 (E.D. Cal. 1993).................................................................- 15 -

New York v. Shore Realty Corp., 759 F.2d 1032 (2d Cir. 1985).....................................- 3 -, - 14 -

Pakootas v. Teck Cominco Metals, Ltd., 452 F.3d 1066 (9th Cir. 2006)..................................- 3 -

PLAINTIFF THE UNITED STATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY
08CV5722  - iii-

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

Pritikin v. Dep't of Energy, 254 F.3d 791 (9th Cir. 2001) ........................................- 2 -

Redev. Agency of City of Stockton v. Burlington N. & Santa Fe Ry. Corp.,

   No. Civ. S-05-02087, 2007 WL 1793755, *3 (E.D. Cal. June 19, 2007)............................- 17 -

Robi v. Five Platters, Inc., 838 F.2d 318 (9th Cir. 1988) ............................................. - 22 -, - 23 -

Tanglewood East Homeowners v. Charles-Thomas, Inc.,

   849 F.2d 1568 (5th Cir. 1988) ..........................................................................-17-

United States v. 150 Acres of Land, 204 F.3d 698 (6th Cir. 2000) .........................................- 15 -

United States v. A&N Cleaners & Launderers, Inc., 854 F. Supp 229 (S.D.N.Y. 1994).........- 19 -

United States v. Bestfoods, 524 U.S. 51 (1998) ...............................................................- 17 -

United States v. CDMG Realty Co., 96 F.3d 706 (3rd Cir. 1996)........................................- 17 -

United States v. Chapman, 146 F.3d 1166 (9th Cir. 1998)........................................................- 14 -

United States v. Domenic Lombardi Realty, Inc., 204 F. Supp. 2d 318 (D.R.I 2002) .............- 18 -

United States v. Green, 33 F. Supp. 2d 203 (W.D.N.Y. 1998)...................................................- 23 -

United States v. Horne, No. 05-0497, 2006 WL 290591 (W.D. Mo. Feb. 6, 2006).................- 23 -

United States v. Mendoza, 464 U.S. 154 (1984) ...................................................................- 23 -

United States v. Monsanto, 858 F.2d 160 (4th Cir. 1988) ............................................... - 3 -, - 14 -

United States v. Simon Wrecking, Inc., 481 F. Supp. 2d 363 (E.D. Pa. 2007) ........................- 23 -

United States v. Township of Brighton, 153 F.3d 307 (6th Cir. 1998) ....................................- 14 -

United States v. W.R. Grace & Co., 280 F. Supp. 2d 1135 (D. Mont. 2002)...........................- 21 -

United States v. Wash. State Dep't of Transp.,

   No. C05-5447RJB,  2006 WL 3327071 (W.D. Wash. Nov. 15, 2006) ..............................- 13 -

Wash. State Dep't of Transp. v. EPA, 927 F.2d 1309 (D.C. Cir. 1990) ......................................- 6 -

Wash. State Dep't Transp. v. Wash. Natural Gas Co.,

   59 F.3d 793 (9th Cir. 1995) .......................................................... - 2 -, - 7 -, - 16-

Westfarm Assocs. Ltd. P'ship v. Wash. Suburban Sanitary Comm'n,

   66 F.3d 669 (4th Cir. 1995) ...............................................................................- 20 -

WSDOT v. EPA, 917 F.2d 1309 (D.C. Cir. 1990) ........................................................ - 6 -, - 20 -

PLAINTIFF THE UNITED STATES' MOTION FOR     UNITED STATES DEPARTMENT OF JUSTICE
PARTIAL SUMMARY JUDGMENT ON LIABILITY     Environment and Natural Resources Division
08CV5722  - iv-     P.O. Box 7611, Washington, D.C. 20044-7611

**State Cases**

Asarco Inc. v. Dep't of Ecology, 145 Wash. 2d 750 (Wash. 2002) ......................................- 22 -

Bird-Johnson Corp. v. Dana Corp., 119 Wash. 2d 423 (Wash. 1992) ..........................- 12 -, - 22 -

City of Seattle, Executive Servs. Dep't v. Visio Corp.,

    108 Wash. App. 566, 577 (Wash. App. 2001) .................................................................- 24 -

Nielson v. Spanaway Gen. Med. Clinic, 135 Wash. 2d 255 (1998) .............................- 22 -, - 23 -

Riblet v. Ideal Cement Co., 57 Wash. 2d 619 (1961) .............................................................- 23 -

**Federal Statutes**

Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") 42
U.S.C. §§ 9601 *et seq.*, as amended by the Superfund Amendments and Reauthorization Act
("SARA") 42 U.S.C. § 9601 *et seq.*

**State Statute**

Model Toxics Control Act ("MTCA"), Wash. Rev. Code ANN. § 70.105D.04 ......................- 22 -

PLAINTIFF THE UNITED STATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY
08CV5722  - v-

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1     HONORABLE ROBERT J. BRYAN

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
8                              AT TACOMA

9

10    UNITED STATES OF AMERICA,              )   Case No.: 3:08-cv-05722RJB
                                             )
11        Plaintiff and Counterclaim Defendant )   PLAINTIFF UNITED STATES'
                                             )   MOTION FOR PARTIAL SUMMARY
          vs.                                )   JUDGMENT ON LIABILITY RE:
12                                           )   COAL TAR CONTAMINATION
13                                           )
                                             )
14    WASHINGTON STATE DEPARTMENT OF          )   ORAL ARGUMENT REQUESTED
15    TRANSPORTATION                         )
                                             )   NOTE ON MOTION CALENDAR:
16        Defendant and Counterclaimant.     )   June 18, 2010

17        On July 31, 2009, after granting partial summary judgment and conducting a bench trial,

18    the Washington Superior Court entered a final judgment in the case of *Pacificorp Env't'l*

19    *Remediation Co. v. Washington State Dep't of Transportation,* No. 07-2-10404-1 (Pierce

20    County).  As set forth in the findings of fact below, the judgment held WSDOT liable under the

21    Washington State Model Toxics Contamination Act ("MTCA") for coal tar releases into the

22    Thea Foss Waterway.

23        The Superior Court found, and the overwhelming, undisputed evidence establishes, that

24    the Washington State Department of Transportation ("WSDOT") bought, owned, and operated

25    multiple contaminated tracts of land – collectively referred to as the Tacoma Spur Property –

26    adjacent to the Thea Foss Waterway and within the Commencement Bay Nearshore/Tideflats

27    Superfund Site ("CB/NT Site").  Shortly after purchasing the Tacoma Spur Property, WSDOT's

28    initial excavations for the Tacoma Spur project unearthed coal tar contamination. Coal tar

PLAINTIFF THE UNITED STATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY
08CV5722  - 1-

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1    contains compounds of polycyclic aromatic hydrocarbons ("PAHs") and heavy metals that are

2    hazardous substances under MTCA and CERCLA.  So WSDOT performed some cleanup work

3    of the property, but with the knowledge that some coal tar would remain.  Nevertheless, WSDOT

4    installed a drainage system (the "DA-1 drainage system") on the property, which acted as a

5    pathway for the remaining coal tar and funneled it into the Thea Foss Waterway.  Fully aware

6    that the DA-1 drainage system was an ongoing source of PAH contamination to the waterway –

7    and despite repeated requests by the Washington State Department of Ecology ("Ecology") and

8    EPA that WSDOT address the problem – WSDOT took fourteen years after learning coal tar was

9    infiltrating the DA-1 drainage system to cut off that source.  The Superior Court found that

10   WSDOT unreasonably delayed its response to the PAH releases from the DA-1 drainage system.

11       The United States moves for partial summary judgment based on the same undisputed

12   facts that WSDOT was found liable for in state court.  These undisputed facts conclusively

13   establish WSDOT's liability under CERCLA Section 107(a)(1) and (a)(2), which impose

14   liability on current owners or operators of a facility "from which there is a release" of a

15   hazardous substance, and owners and operators of such facilities "at the time of disposal" of a

16   hazardous substance.  And since the state court judgment and the United States' motion are

17   based on the same undisputed facts and post-trial findings of fact that conclusively established

18   WSDOT's liability under MTCA, WSDOT is precluded from re-litigating these same facts under

19   the doctrine of collateral estoppel.

20                                **STATUTORY BACKGROUND**

21       Congress enacted CERCLA in 1980 "to protect and preserve public health and the

22   environment by facilitating the expeditious and efficient cleanup of hazardous waste sites,"

23   *Pritikin v. Dep't of Energy*, 254 F.3d 791, 794-95 (9th Cir. 2001), while at the same time

24   "'placing the ultimate financial responsibility for cleanup on those responsible for hazardous

25   wastes." *WSDOT v. Wash. Natural Gas Co.,* 59 F.3d 793, 799 (9th Cir. 1995).  To carry out

26   these goals, CERCLA authorizes the United States to act directly to abate releases of hazardous

27   substances into the environment, and creates a Hazardous Substance Response Trust Fund,

1   known as the Superfund, to finance federal response actions.  42 U.S.C. § 9604(a); § 9611(a).

2   CERCLA Section 107(a) then authorizes the United States to recover its costs from four classes

3   of responsible parties, three of which are relevant to this motion: (1) current owners or operators

4   of the facility, (2) owners or operators at the time of disposal of hazardous substances at or from

5   the facility, and (3) entities who arrange for disposal of hazardous substances.  42 U.S.C. §

6   9607(a).

7       Liability under CERCLA attaches without regard to negligence or culpable conduct.

8   *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1078 (9th Cir. 2006); *United States v.*

9   *Monsanto,* 858 F.2d 160, 167 (4th Cir. 1988); *New York v. Shore Realty Corp.,* 759 F.2d 1032,

10  1044 (2d Cir. 1985).  Moreover, Congress provided only three affirmative defenses for liable

11  parties under the Act, which are narrowly construed.  *Idaho v. Hanna Mining Co.*, 882 F.2d 392,

12  396 (9th Cir. 1989) (holding that exceptions to CERCLA liability should be narrowly construed

13  to give liberal effect to the Act's remedial purpose); *see also* 42 U.S.C. § 9607(b) (setting forth

14  "act of God," "act of war," and "third party" defenses to liability).

15  **STATEMENT OF UNDISPUTED MATERIAL FACTS**

16      The United States' Complaint sets forth claims against WSDOT for recovery of costs

17  incurred in responding to releases of hazardous substances at the Thea Foss and Wheeler Osgood

18  Waterway problem areas within the CB/NT Superfund Site.  These claims are based on two

19  separate sets of facts, the first involving discharge of coal tar by WSDOT from contaminated

20  property that it acquired in connection with highway construction, and the second involving

21  WSDOT's discharge of contaminated runoff from highways that it owns and operates.  As this

22  Court is aware, the parties have filed cross-motions for summary judgment on the second set of

23  allegations.

24      The current motion for partial summary judgment is limited to the first set of allegations.

25  In support of the current motion, the United States' Motion for Partial Summary Judgment re

26  Coal Tar Contamination is based on the following undisputed facts:

27

PLAINTIFF THE UNITED STATES' MOTION FOR             UNITED STATES DEPARTMENT OF JUSTICE
PARTIAL SUMMARY JUDGMENT ON LIABILITY               Environment and Natural Resources Division
08CV5722  - 3-                                      P.O. Box 7611, Washington, D.C. 20044-7611

1    *The CB/NT Superfund Site*

2    1.    The Commencement Bay Nearshore/Tideflats Superfund Site is a 10-12 square

3    mile area in Tacoma, Washington that encompasses shallow water, shoreline, and adjacent land,

4    most of which is highly developed and industrialized.  (Decl. of Piper Peterson Lee, ("Peterson

5    Lee Decl.") ¶ 5; Answer of Def. WSDOT, Dkt. # 12, ("Answer") ¶ 11.)

6    2.    Due to widespread contamination of the water, sediments, and upland areas, the

7    Site was listed as one of the ten highest priority hazardous waste sites in the United States in

8    October 1981, and placed on the first proposed National Priorities List in December 1982, which

9    was finalized in 1983.  (Peterson Lee Decl. ¶ 10; Answer ¶¶ 12-13.)

10    3.    A 1988 Remedial Investigation and Feasibility Study ("RI/FS") concluded that

11    sediments in the CB/NT Site were contaminated with a large number of hazardous substances.

12    Contaminants of concern – due to their risk of harm to public health, welfare, and the

13    environment – included metals (e.g., arsenic, lead, mercury, and zinc), polychlorinated biphenyls

14    ("PCBs"), and polycyclic aromatic hydrocarbons ("PAHs").  (Peterson Lee Decl. ¶ 11.)

15    4.    Because of the complexity of the Site, the United States Environmental Protection

16    Agency ("EPA") and the Washington State Department of Ecology ("Ecology") divided clean up

17    of the Site into multiple "operable units," including OU1, which dealt with contaminated

18    sediments, and OU5, which dealt with upland sources of contamination into the Bay and its

19    waterways. (Peterson Lee Decl. ¶¶ 10, 13; Answer ¶ 14.)  EPA further divided the Site into eight

20    "problem areas" based on location of contaminated sediments. (Peterson Lee Decl. ¶ 14.)

21    5.    Three of the problem areas – the Head of Thea Foss Waterway, the Mouth of the

22    Foss, and the Wheeler-Osgood Waterway – encompass two connected Waterways directly

23    adjacent to downtown Tacoma, and have been managed collectively by EPA and Ecology.[1]

24    (Peterson Lee Decl. ¶ 14.)  Remedial investigation of these Waterways identified hundreds of

25    thousands of square yards of sediment contaminated with hazardous substances, including PAHs,

---

[1]  The Thea Foss Waterway was previously referred to as the "City Waterway."

1  cadmium, copper, lead, mercury, zinc, and phthalates.  (Peterson Lee Decl. ¶ 12.)

2      6.     Cleanup of the Thea Foss and Wheeler Osgood Waterways was completed on

3  September 29, 2006.  (Peterson Lee Decl. ¶ 19.)

4      7.     EPA has incurred, and continues to incur, unreimbursed costs in responding to

5  releases at the Thea Foss and Wheeler Osgood Waterways problem areas within the CB/NT

6  Superfund Site.  (Peterson Lee Decl. ¶¶ 25, 27, 33.)

7  *WSDOT's Ownership and Operation of the Tacoma Spur Property*

8      8.     Starting June 22, 1982 and for several years thereafter until at least August 28,

9  1995, WSDOT purchased parcels of land – the Tacoma Spur Property – approximately 500 feet

10 from the Thea Foss Waterway for use in constructing an urban highway connecter called the SR

11 705 Tacoma Spur.  (WSDOT 30(b)(6) Dep. at 13:1-6, 14:13-15:2, 21:2-6 (Greene Decl.[2] Ex. 1);

12 List of land parcels acquired by WSDOT for SR 705 and SR 509 construction (Ex. 2); Map of

13 SR 705 from Milepost 0.02 to 1.49, Sheet 2 of 8 (Ex. 3); Map of SR 705 from Milepost 0.02 to

14 1.49, Sheet 3 of 8 (Ex. 4).)  The Superior Court found that WSDOT in 1984 bought a plot of land

15 that formerly was part of a manufactured gas plant site.  (Findings of Fact and Conclusions of

16 Law, *Pacificorp Environmental Remediation v. WSDOT*, No. 07-2-10404-1 (Ex. 16 at 3).)

17     9.     Despite documents that suggested a "manufactured gas facility was once operated

18 in the approximate location" of the Tacoma Spur Property and physical evidence of coal tar

19 deposits on the property in the form of surface outcroppings and coal tar odors, WSDOT

20 conducted no investigation of the Tacoma Spur Property, conducted no sampling of the property,

21 did not investigate the previous uses of the property, and did not perform an environmental

22 assessment of the property prior to acquisition.  (WSDOT 30(b)(6) Dep. at 12:25-18:10 and

23 16:19-17:22 (Ex. 5); Warranty Deed and Closing Agreement (Ex. 6); Report, "WSDOT Meets

24 the Challenge of Hazardous Substances" (Ex. 7 at 24702221-24).)

---

[2] All further exhibits that are given without any other citation or supporting information are supported by the Declaration of Richard Greene.

10.   WSDOT has continuously owned the Tacoma Spur Property on behalf of the State since its purchase.  (Ex. 1 at 17:8-18:5); Answer ¶ 23; WSDOT's 104(e) Response to EPA admitting ownership (Ex. 8 at CBA216_001429; CBA216_001458); WSDOT petition for review in *WSDOT v. EPA*, 917 F.2d 1309, 1311 (D.C. Cir. 1990) (Ex. 9); Ecology Agreed Order DE 93TC-S166 containing WSDOT's admission of ownership (Ex. 10 at 24011222, ¶ 3); Ecology Agreed Order DE 95TC-S167 containing WSDOT's admission of ownership (Ex. 11 at 24000235, ¶¶ 2-3); WSDOT's 104(e) Response to EPA admitting ownership (Ex. 12 at 24708513).)

11.   The Tacoma Spur Property is within the boundaries of the CB/NT Site. (WSDOT's Amended Resp. to RFA No. 5 (Ex. 13); Ex. 8 at THEA-MISC009164, 1429; Ex. 10 at 24011225, ¶ 14; *see also WSDOT v. EPA*, 927 F.2d 1309, 1312 (D.C. Cir. 1990) ("[WSDOT's] Tacoma Spur Property plainly fell within the broad compass of the 1983 Commencement Bay listing.").)

12.   In 1984, during drilling conducted for evaluation of the Tacoma Spur foundation requirements, WSDOT's contractor encountered coal tar contamination, including PAHs, left behind by a coal gasification plant that operated on the site between 1884 and 1924. (Report prepared for WSDOT re: subsurface explorations of Tacoma Spur Property (Ex. 14 at 77000026); Ex. 16 at 3.)  Historical photos taken prior to the SR 705 construction indicate three very large structures – gas holders for the coal gasification facility – once existed on the property.  WSDOT's excavations uncovered at least two of these gas holders, which contained large quantities of coal tar and other materials.  (Answer ¶¶ 26-27; Report on Tacoma Spur Property showing locations of gas holders (Ex. 15 at 1298810-0026, THEA-MISC001645).)

13.   After discussions with Ecology, WSDOT agreed to remove "readily accessible" coal tar residuals "encountered during construction," excavate two feet below the desired level, and back-fill the location with soil.  (Ecology letter of recommendations for WSDOT to excavate the property (Ex. 18 at 24702258, 24702276); WSDOT's Interrog. Resp. Nos. 3 & 4 (Ex. 19); Thompson Dep. at 107:13-25 (Ex. 20); Ex. 16 at 3.)  WSDOT subsequently sued three utilities

1   for contribution under CERCLA.   The Ninth Circuit held that WSDOT was not entitled to

2   recover any costs due to a "high degree of inconsistency with the requirements set forth in the

3   NCP [National Contingency Plan]," including the fact that "WSDOT failed to assess accurately

4   both the nature and the extent of the threat posed by the present of PAHs in the soil."  *Wash.*

5   *Natural Gas Co.*, 59 F.3d at 805.

6        14.   Because WSDOT had agreed only to remove contamination "encountered" during

7   excavation, WSDOT and Ecology were aware contamination would remain behind, both on

8   WSDOT's property and within the general area.   Thus, Ecology informed WSDOT that the

9   excavation would not constitute a final cleanup action for the Tacoma Spur Property.  (Ex. 5 at

10  24:10-25:24; Ex. 21 at 56:25-60:10; Ex. 18 at 24702258-62, 24702284; Ex. 20 at 27:20-25 to

11  28:1-13; Ziegler Dep. at 75:22-25 (Ex. 22); WSDOT AG memo stating "everyone involved

12  knew that more contamination remained in areas outside the excavation area." (Ex. 23 at THEA-

13  MISC001308); Transcript of *WSDOT vs. Washington Natural Gas Co. et al.*, No. C-89-415T

14  (Ex. 17 at 741:7-10).)

15       15.   In 1986, as part of the Tacoma Spur project, WSDOT started a project to extend

16  A Street.   During excavation for the extension, WSDOT encountered PAH-contaminated soil.

17  (Ex. 16 at 4.)

18       16.   As part of the A Street extension, WSDOT installed the DA-1 drainage system to

19  lower the high water table at the location.  (Ex. 16 at 4).  The system consisted of two perforated

20  pipes to drain water away from the surface; that connected to three catch basins, which

21  connected to the City-owned 23rd street storm drain by a corrugated metal pipe that emptied into

22  the Thea Foss Waterway via a pair of 96-inch storm drain pipes ("Twin 96ers").  (Answer ¶¶ 34-

23  35; Sawyer Dep. at 13:7-11, 15:9-19:16 (Ex. 24); Diagram of the DA-1 drainage system (Ex.

24  25); Coleman Dep. at 27:19-29:25 (Ex. 26); July 19, 1995 Revised Interim Action Report for SR

25  705 prepared for WSDOT (Ex. 27 at 24703858); April 1994 Draft Focused Site Characterization

26  and Interim Remedial Action Evaluation Report showing location of DA-1 line relative to the

27  gas holders (Ex. 28 at 24704522).)

1      17.    The DA-1 drainage system crossed the footprint of the two southern gas holders,

2  in the heart of the historical coal gasification plant operational area.  (Ex. 28 at 24704522

3  (diagram showing location of DA-1 line relative to the gas holders), 24704524 (diagram showing

4  extent of coal tar related contamination); February 1, 1995 Ecology comments on Tacoma Spur

5  Property that "significant NAPL source areas have been identified near the three former gas

6  holder areas" (Ex. 29 at 24009217); WSDOT AG letter to Ecology stating the drainage system

7  "is installed in the area where coal gas storage tanks and deposits of free tar were discovered"

8  (Ex. 30 at THEA-MISC000597).)

9      18.    Before WSDOT installed the DA-1 drainage system, groundwater monitoring

10  reports found that contaminated groundwater from the Tacoma Spur Property had a minimal

11  impact on the Waterway.  (Soil and Groundwater Quality Evaluation for SR-705 prepared for

12  WSDOT in 1984 (Ex. 31 at 77000272); *See also* Ex. 18 at 24702292; Anderson Dep. at 95:1-4

13  (Ex. 32); Ecology letter to WSDOT dated April 9, 2001 stating the "contamination at the

14  [Tacoma Coal Gas] Plant property does not appear to represent a source of NAPL contamination

15  to the Thea Foss Waterway via a groundwater flux pathway" (Ex. 33 at 1304317-0055).)

16      19.    After its installation, the DA-1 drainage system became contaminated with coal

17  tar and other hazardous substances – including PAHs – and transported these substances into the

18  Thea Foss Waterway.  (Ex. 13 at Nos. 6 & 7; Ex. 16 at 4, ¶ 6 & at 5, ¶ 14; July 25, 1989

19  WSDOT memo (Ex. 34).)

20      20.    WSDOT learned the DA-1 drainage system was a potential source of hazardous

21  substances into the Waterway no later than April 1989, when its hazardous waste management

22  consultant, Hart Crowser, informed WSDOT that expanded source control efforts in the

23  Commencement Bay Site could "significantly impact WSDOT at the 21st to 24th Street Site,

24  especially the DA-1 line drain."  (April 14, 1989 memo from Hart Crowser to WSDOT (Ex. 40).)

25      21.    In a May 5, 1989 letter, Hart Crowser further reported to WSDOT that the DA-1

26  line catch basins contained PAHs.  (Ex. 41 at Thea-Misc001315.)   An internal WSDOT

27  communication in July 1989 indicated that "samples of the outfall from the [DA-1 drainage]

1    system show significant contamination, which ends up as a pollutant in the City Waterway.  This

2    waterway is part of the overall Commencement Bay, Tacoma Tideflats Superfund cleanup site."

3    Hart Crowser recommended that WSDOT plug the underdrain system to prevent additional

4    contamination. (Ex. 34.)

5          22.     WSDOT took no action until 1992, when an Ecology inspector noticed a "whiff

6    of something that really smelled bad" while he was driving by the DA-1 drainage system, and

7    saw "a very considerable sheen on the water that was in the catch basin." (Ex. 26 at 15:3-16).  A

8    subsequent WSDOT inspection found "two feet of sludge in the bottom of the catch basin that

9    was heavily contaminated with coal tar." (Ex. 35.)  The inspection also noted "a strong coal tar

10   odor has been noticed at the outfall over the last one to two years."  (Ex. 35).  Ecology sampling

11   of the catch basins at the time found that total PAHs were 1,366,000 ug/kg. (Ex. 37 at HYESD-

12   009883).  Other hazardous substances were also found in the sample at elevated levels.  (Ex. 36

13   at 1301344-0003; Ex. 10 at 24011223.)

14         23.     Nevertheless, an internal WSDOT communication dismissed the problem, stating

15   that it "doesn't appear to be a real hot situation at this point," and it was the City of Tacoma, not

16   WSDOT, who took the first steps to stop the DA-1 drainage system from polluting the Thea

17   Foss, by plugging the connections between the french drain pipes and the catch basins in the

18   winter of 1992.  (June 3, 1992 internal WSDOT e-mail (Ex. 42); Ex. 13 at Amended RFA No.

19   10; Ex. 10 at 24011224, ¶ 10.)

20         24.     Despite the City's interim actions, a 1994 study of the site found significant

21   quantities of PAHs in and around the DA-1 drainage system, including carcinogenic PAHs.  (Ex.

22   28 at 24704516, 24704572-74, 24704738-44.)   Staining, strong odors, and tar seepage were

23   observed in the vicinity of one of the previously demolished gas holders.  (Ex. 28 at  24704546,

24   49.)  The study also determined that one french drain was not plugged.  (Ex. 28 at 24704525.)

25         25.     In April 1994, Ecology reiterated to WSDOT that the drainage system was "one

26   of the primary pathways of coal-tar contaminant migration to the waterway."  (April 19, 1995

27   letter from Ecology to WSDOT (Ex. 43 at 24000532.01).)

PLAINTIFF THE UNITED STATES' MOTION FOR             UNITED STATES DEPARTMENT OF JUSTICE
PARTIAL SUMMARY JUDGMENT ON LIABILITY                 Environment and Natural Resources Division
08CV5722  - 9-                                        P.O. Box 7611, Washington, D.C. 20044-7611

1    26.    WSDOT made its first attempt to plug the DA-1 drainage system in 1996 – seven

2    years after it learned of the issue – in conjunction with the construction of the SR-509 bridge.  At

3    that time, WSDOT removed the connections between the french drain and the catch basins, and

4    plugged the connections with concrete – a process that took one day. (Ex. 27 at 24703858; Ex.

5    16 at 4, ¶ 8; Schofield Dep. at 41:2-43:25 (Ex. 44).)

6    27.    WSDOT knew before it cut the french drain connection and plugged the pipes

7    with concrete that its work would not completely eliminate contaminant seepage into the DA-1

8    drainage system. WSDOT's contractor later warned WSDOT that hydrostatic pressure created by

9    removal of the french drain system "has created infiltration into the new drainage structure and

10   storm sewer.  This groundwater infiltration appears to be contaminated with coal tar residue and

11   is entering the storm sewer system."  (May 1, 1997 WSDOT Record of Telephone Conversation

12   (Ex. 45); *See also* Ex. 24 at 27:3-24, 39:8-18.)

13   28.    As predicted, coal tar continued to infiltrate the DA-1 drainage system.  (Ex. 16 at

14   4, ¶ 8.)  The City of Tacoma investigated the drainage system again in 1998, and found strong

15   petroleum odors near the DA-1 line catch basins and black sludge in the system.  Sampling

16   results confirmed the contamination consisted of coal tar and PAHs.  A TV inspection of the

17   system provided further evidence of contamination within the pipes, and in one section of the

18   system, "only 32 ft. of pipe could be inspected before the tracks on the camera sled began

19   slipping in black oily sludge."  The City concluded that coal tar or coal tar-related product was

20   infiltrating the drainage system and that the drainage system was an ongoing point source of

21   PAHs to the Thea Foss Waterway.  (Ex. 38 at 1206013-0351 to 1206013-0353.)

22   29.    WSDOT began considering additional options to address the ongoing

23   contamination in 1998, yet did not act. (Ex. 16 at 5, ¶ 12; October 28, 1998 WSDOT Record of

24   Telephone Conversation (Ex. 46)).  By 2000, an internal memo revealed that some WSDOT

25   officials were becoming frustrated with lack of attention to the matter. (November 21, 2000

26   WSDOT Internal Memo re Project Status (Ex. 39 at 24005601).)

27   30.    WSDOT ignored repeated requests from Ecology to stop the discharge of PAHs

1    to the Waterway from the DA-1 line and also failed to respond to voicemail or email until

2    Ecology "elevated" the request to higher management (Ex. 16 at 5, ¶ 11; Ex. 26 at 131:10-17,

3    133:3-20.)   WSDOT similarly ignored repeated requests by EPA to attend source control

4    meetings discussing DA-1 line issues, and EPA was forced to have "top-level discussions" with

5    WSDOT in an attempt to address its uncooperative behavior.  (Flint Decl. ¶ 11-13; *See also* May

6    10, 1995 letter from EPA to WSDOT (Ex. 47).)  WSDOT's "persistent, uncooperative behavior"

7    with Ecology and EPA became a barrier for moving the cleanup project forward in the

8    Waterways.  (Ex. 16 at 8, ¶¶3-5.)

9        31.    In March 2003, four years after deciding to consider additional options and

10   fourteen years after it first knew of the PAH problem, WSDOT cut out a section of the

11   corrugated metal pipe that connected the DA-1 catch basins to the 23rd street storm drain and

12   finally disconnected the DA-1 drainage system from the Twin 96ers.   (Ex. 16 at 5, ¶ 12;

13   December 18, 2002 internal WSDOT e-mail (Ex. 48); March 6, 2003 letter from WSDOT to City

14   of Tacoma (Ex. 49).)  WSDOT observed that the corrugated metal pipe was contaminated with

15   coal tar. (Ex. 24 at 92:24-93:10.)   The cost to remove the corrugated metal pipe was

16   approximately $64,000. (Ex. 48.) The total cost of construction for the SR 705 was

17   approximately $100 million and was paid for with state and federal funds. (June 10, 1998 letter

18   from WSDOT to Thea Foss Participants Group (Ex. 50 at 77001656).)

19   ***Enforcement Background and State Court Litigation***

20       32.    Beginning in 1989 and continuing into the 1990s, EPA sent out four notices of

21   potential liability to WSDOT and other potentially responsible parties ("PRPs") for the Thea

22   Foss and Wheeler Osgood Waterway problem areas.  (Peterson Lee Decl. ¶¶ 20-21, 24-25, 27.)

23   The majority of PRPs cooperated with EPA and ultimately entered into two consent decrees for

24   performance and funding of the remedy at the Waterways.  (Peterson Lee Decl. ¶¶ 28-30; *see*

25   *also* Consent Decrees in *United States v. Advance Ross Sub Co., et al,* No.c03-5117RJB (W.D.

26   Wash.) (Ex. 62) & *United States v. Atlantic Richfield Co., et al.*, No. c03-5117RJB (W.D. Wash.)

27   (Ex. 63).)   However, WSDOT did not join in these decrees or otherwise agree to perform

PLAINTIFF THE UNITED STATES' MOTION FOR          UNITED STATES DEPARTMENT OF JUSTICE
PARTIAL SUMMARY JUDGMENT ON LIABILITY            Environment and Natural Resources Division
08CV5722 - 11-                                   P.O. Box 7611, Washington, D.C. 20044-7611

1    cleanup work or pay EPA's response costs.  (Peterson Lee Decl. ¶¶ 31-32.)

2           33.    On July 27, 2007, two parties who had cooperated with EPA in conducting the

3    cleanup of the Waterways sued WSDOT in Washington state court for contribution under the

4    MTCA, the state version of CERCLA.  (June 27, 2007 Complaint in *Pacificorp et al. v. WSDOT*,

5    No.07-2-10404-1 (Wash. Sup. Ct.) (Ex. 51)); *see also Bird-Johnson Corp. v. Dana Corp.*, 119

6    Wash. 2d 423, 427 (Wash. 1992) (MTCA was "heavily patterned" after CERCLA and its

7    amendments).  Among other claims, the state court complaint alleged that WSDOT was liable

8    for contribution as an owner/operator and an owner/operator at the time of disposal of hazardous

9    substances based on its ownership of the Tacoma Spur Property and the installation and

10   operation of the DA-1 drainage system.  (Ex. 51 at ¶¶ 29-30, 32, 36.)

11          34.    On November 10, 2008, the Superior Court granted summary judgment in favor

12   of the plaintiffs with respect to their "claims derived from releases associated with DOT's DA-1

13   drainage system."  (Order granting Puget Sound Energy's and Pacificorp's Motion for Partial

14   Summary Judgment on WSDOT's liability under MCTA (Ex. 52).)

15          35.    On February 5, 2009, after a several-week trial, the state court issued an opinion

16   ordering judgment for the plaintiffs against WSDOT in the amount of $6,000,000, plus

17   attorneys' fees and costs.  (February 5, 2009 Memorandum Opinion in *Pacificorp v. WSDOT*

18   (Ex. 53)).  The parties subsequently submitted a joint statement of facts and conclusions of law,

19   signed by the court on April 20, 2009.  (Ex. 16.) And on July 31, 2009, the state court entered

20   final judgment against WSDOT.  (Ex. 54.)

21          36.    The Superior Court found that "significant amounts of coal tar" and "an

22   undetermined amount of PAHs" were released from the DA-1 drainage system to the Thea Foss

23   Waterway.  (Ex. 52 at 4; Ex. 16 at 5.)

24          37.    The Superior Court found that WSDOT "unreasonably delayed implementing a

25   solution to the releases from the DA-1 line to the Waterway."  (Ex. 16 at 5; Ex. 53 at 4.)

26

1

## SUMMARY JUDGMENT STANDARD

2    Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment

3 when the pleadings, discovery, and affidavits show that there is no genuine issue as to any

4 material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

5 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32 (1986). "[T]he mere existence of *some*

6 alleged factual dispute between the parties will not defeat an otherwise properly supported

7 motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

8 fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Recognizing that summary

9 judgment affords a precise scalpel for eliminating issues over which there is no substantial

10 controversy, courts routinely use partial summary judgment to resolve CERCLA liability issues,

11 while leaving the determination of the amount and recoverability of specific costs for a

12 subsequent phase of action. *See, e.g., United States v. Wash. State Dep't of Transp.*, No. C05-

13 5447RJB, 2006 WL 3327071 (W.D. Wash. Nov. 15, 2006); *Am. Nat. Bank & Trust of Chicago v.*

14 *Harcros Chems., Inc.*, No. 95C3750, 1997 WL 281295 at *6 (N.D. Ill. May 20, 1997).

15

## ARGUMENT

16    As described below, the undisputed facts demonstrate that WSDOT is a liable party under

17 CERCLA Section 107(a), both as a current owner of contaminated property and as owner and

18 operator of that property at the time of discharge. Moreover, the Superior Court adjudicated the

19 same issues under the same set of facts regarding the DA-1 drainage system and held WSDOT

20 liable for cleanup costs pursuant to a state law that closely mirrors CERCLA. Accordingly,

21 summary judgment is appropriate.

22
23 **I.    THE UNDISPUTED FACTS ESTABLISH WSDOT'S LIABILITY UNDER**
**SECTION 107(a)(1) AND 107(a)(2).[3]**

24    To establish WSDOT's liability, the United States need only prove that: (1) the Site is a

25 "facility," (2) a release or threatened release of hazardous substances has occurred, (3) the

---

[3]    The arguments presented below do not exhaust the United States' theories of liability. This motion, in an
attempt to narrow the issues for discovery and simplify the case, only sets forth liability arguments under 107(a)(1)
and 107(a)(2) associated with the Tacoma Spur property and the DA-1 drainage system.

1   release or threatened release has caused EPA to incur response costs, and (4) WSDOT is a liable

2   party under CERCLA Section 107(a). *United States v. Chapman*, 146 F.3d 1166, 1169 (9th Cir.

3   1998).

4        Here, WSDOT has admitted the first three elements in its answer and discovery

5   responses. The fourth element is established by undisputed factual evidence that WSDOT is the

6   current owner of the Tacoma Spur property (which lies within the "facility," the Commencement

7   Bay Superfund Site), and that WSDOT was the owner and operator of that property and of the

8   DA-1 drainage system at the time that system disposed hazardous substances into the Waterway.

9   Indeed, a state court adjudicating the same issues under the same set of facts has already held

10   WSDOT liable for cleanup costs. Accordingly, summary judgment on liability is appropriate.

11   Moreover, a ruling on liability will narrow the scope of litigation, thereby conserving the

12   resources of this Court and of the parties, and may promote settlement discussions.[4]

13        **A.    WSDOT Owns Land Within a Superfund Site.**

14        All that is required to establish liability under CERCLA Section 107(a)(1) is evidence

15   that WSDOT is the current owner of "facility" property, regardless of whether WSDOT caused

16   or contributed to a release of hazardous substances. *See Shore Realty*, 759 F.2d at 1044-45;

17   *Monsanto*, 858 F.2d at 168; *R.W. Meyer, Inc.*, 889 F.2d at 1507; *Stringfellow*, 661 F. Supp. at

18   1063. Moreover, ownership of one portion of a "facility" – whose boundaries are defined by the

19   extent of contamination, not by property lines – is sufficient to establish liability for response

20   costs at that facility as a whole. *Axel Johnson v. Carroll Carolina Oil Co., Inc.*, 191 F.3d 409,

21   417-419 (4th Cir. 1999) (holding that entire contaminated thirteen acre refinery property

22   operated by defendant was one "facility," and rejecting defendant's argument that each tank and

23   spill area on the property for which it was not responsible was a separate facility under

24   CERCLA); *United States v. Township of Brighton*, 153 F.3d 307, 312-313, 322-23 (6th Cir.

---

[4]     In the event that the Court finds genuine issues of material fact as to any individual element of liability, the United States respectfully requests that the Court enter summary judgment as to those elements not in dispute, pursuant to FRCP 56(d).

PLAINTIFF THE UNITED STATES' MOTION FOR       UNITED STATES DEPARTMENT OF JUSTICE
PARTIAL SUMMARY JUDGMENT ON LIABILITY     Environment and Natural Resources Division
08CV5722 - 14-                      P.O. Box 7611, Washington, D.C. 20044-7611

1   1998); *United States v. 150 Acres of Land*, 204 F.3d 698, 707-09 (6th Cir. 2000); *Louisiana-*

2   *Pacific Corp. v. Beazer Materials & Servs., Inc.*, 811 F. Supp. 1421, 1431 (E.D. Cal. 1993);

3   *Stringfellow*, 661 F. Supp. at 1059.

4   Here, WSDOT has admitted on multiple occasions that it purchased the Tacoma Spur

5   Property in the 1980s on behalf of the State of Washington and remains the owner of the

6   property. (Ex. 1 at 12:7-21, 13:2-6, 14:13-17, 17:3-10; Ex. 2; Ex. 3; Ex. 4.)   Numerous

7   documents contain its admission including:

8   • Title documents (Ex. 6);

9   • WSDOT's 1989 response to EPA's request for information under CERCLA Section

10  104(e) (Ex. 8 at CBA216_001429);

11  • WSDOT's 1997 response to EPA's second Section 104(e) request, signed under the

12  penalty of perjury (Ex. 12 at 24708511-13);

13  • Agreed Orders with Ecology signed by WSDOT officials (Ex. 10 at 24011222; Ex. 11 at

14  24000235; Ecology Agreed Order, No. DE 95TC-S167 (Ex. 55 at 24011257, 59)); and

15  • Statements made by WSDOT internally and to regulators and courts.  (March 27, 2003

16  email from WSDOT to Ecology (Ex. 56)); *See generally,* SOF ¶¶ 1-10).

17  Moreover, the Tacoma Spur Property owned by WSDOT is contaminated with hazardous

18  substances, and it is within the boundaries of a Superfund Site.  (SOF ¶¶11, 12, 19.)  Thus,

19  WSDOT is liable as a current "owner" of "facility" property under Section 107(a)(1) of the Act.

20  WSDOT may argue that it is not the "owner" of the Tacoma Spur Property because the

21  State of Washington, not WSDOT, owns highway-related properties.  (*See* Answer ¶¶ 22-23.)

22  But this position is completely irrelevant, because WSDOT has already admitted to owning the

23  property during its 30(b)(6) depositions.  What's more is this argument, as well as its implied

24  distinction between WSDOT and the State, stands in stark contrast to previous assertions made

25  by WSDOT – not only under penalty of perjury to EPA, but also to the Ninth Circuit, the D.C.

26  Circuit, and the Supreme Court.  For example, in a prior cost recovery action arising from

27  WSDOT's excavation of contaminated substances on the Tacoma Spur Property, WSDOT

PLAINTIFF THE UNITED STATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY
08CV5722  - 15-

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1    successfully convinced the Ninth Circuit Court of Appeals that it should be considered the

2    "State" for purposes of CERCLA Section 107(a) analysis.  *See* Ex. 57 at 11; *Wash. Natural Gas*

3    *Co.* 59 F.3d at 800 (holding that WSDOT "is the 'state' for purposes of § 9607").

4    **B.    WSDOT Owned and Operated Land Within the**
     **Commencement Bay Site at the Time of Disposal of Hazardous Substances.**

5    WSDOT's ownership and operation at the time of discharge of the Tacoma Spur Property

6    establishes two additional independent bases for liability under CERCLA Section 107(a).  Under

7    Section 107(a)(2), a "person"[5] is liable for response costs if it was the owner or operator of a

8    facility at the time of "disposal" of hazardous substances.  42 U.S.C. § 9607(a)(2).  "Disposal" is

9    broadly defined to include the "discharge, deposit, injection... or placing of any... hazardous

10   waste into or on any land or water."  42 U.S.C. §§ 9601, 6903.

11   As discussed above, WSDOT admits to owning the Tacoma Spur Property from the

12   1980s to present where they installed the DA-1 line, which created a pathway for coal tar

13   contamination to migrate from the Tacoma Spur Property to the Thea Foss Waterway.  *See supra*

14   15:8-20.

15   Numerous admissions from WSDOT and its contractors – in addition to regulatory

16   findings based on visual inspections, TV inspections, smoke testing, and sampling data and

17   analysis by Ecology and the City of Tacoma – demonstrate that coal tar contamination

18   discharged from the Tacoma Spur Property to the Thea Foss Waterway.  (Ex. 35 (describing

19   "two feet of sludge in the bottom of the [DA-1 line] catch basin that was heavily contaminated

20   with coal tar.  The subject catch basin discharges into the nearby Thea Foss Waterway"); Ex. 59

21   (describing the DA-1 drainage system as a "major source of re-contamination from the site");

22   Ex. 34 ("samples of the outfall from the system show significant contamination, which ends up

23   as a pollutant in the City waterway"); *see generally* SOF ¶¶ 18, 19.)

24   As made clear by the Ninth Circuit, this "movement, dispersal, or release" of pre-existing

25   hazardous substances constitutes a "disposal" under CERCLA.  *Kaiser Aluminum Chem. Corp.*

---

[5]    WSDOT has admitted that it is a "person" within the meaning of CERCLA.  (Answer ¶ 5.)

PLAINTIFF THE UNITED STATES' MOTION FOR             UNITED STATES DEPARTMENT OF JUSTICE
PARTIAL SUMMARY JUDGMENT ON LIABILITY                  Environment and Natural Resources Division
08CV5722  - 16-                                        P.O. Box 7611, Washington, D.C. 20044-7611

1  *v. Catellus Dev. Corp.*, 976 F.2d 1338, 1342-43 (9th Cir. 1992) (allegations that defendant

2  excavated and spread contaminated soil are sufficient to establish "disposal"); *see also Redev.*

3  *Agency of City of Stockton v. Burlington N. & Santa Fe Ry. Corp.*, No. Civ. S-05-02087, 2007

4  WL 1793755, *3 (E.D. Cal. June 19, 2007) ("Re-direction of petroleum contaminants through a

5  french drain is a disposal"); *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d

6  1568, 1573 (5th Cir. 1988); *United States v. CDMG Realty Co.*, 96 F.3d 706, 719 (3rd Cir.

7  1996); *Burlington N.R.R. v. Woods Indus., Inc.*, 815 F. Supp. 1384, 1392 n.12 (E.D. Wash.

8  1993).  Thus, WSDOT was an owner at the time of disposal.

9       In addition, WSDOT was an operator of the Tacoma Spur Property during the period of

10  ongoing disposal by the DA-1 drainage system.   WSDOT's activities on the property

11  demonstrate that it was the "operator" of the Tacoma Spur Property under CERCLA: WSDOT

12  installed the DA-1 drainage system (SOF ¶ 16), signed multiple Agreed Orders to address the

13  drainage system contamination (Exs. 10, 11, 55), admitted that removing the corrugated metal

14  pipe was its responsibility (Ex. 24 at 56:6-21), ultimately took action in 2003 to dismantle the

15  system (SOF ¶¶ 29, 31), and thus had control over "the cause of contamination at the time the

16  hazardous substances were released into the environment."  *See Kaiser Aluminum*, 976 F.2d at

17  1341-42 (operator liability attaches to contractor hired to excavate and grade portion of

18  property); *see also United States v. Bestfoods*, 524 U.S. 51, 66-67 (1998) (defining operator as an

19  entity that "manage[d], direct[ed], or conduct[ed] operations specifically related to pollution, that

20  is, operations having to do with the leakage or disposal of hazardous waste").   Therefore,

21  WSDOT is liable as an owner and operator of "facility" property at the time of disposal of

22  hazardous substances under Section 107(a)(2).

23       **C.     WSDOT's Affirmative Defenses Are Legally Insufficient.**

24       WSDOT may argue that it is entitled to the third party defense to liability under Section

25  107(b)(3), or that it should not be considered an owner or operator because it qualifies for the

26  "contiguous properties" exception under 42 U.S.C. § 9607(q).  (*See* Answer, Affirmative

27  Defenses ¶¶ 6, 7, 10.)  WSDOT bears the burden of proof on these affirmative defenses at trial;

1   thus, at the summary judgment stage, the United States must only "point[] out to the district court

2   – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S.

3   at 325.  In this case, there is no set of facts that could allow WSDOT to prevail on its affirmative

4   defenses for two basic reasons: WSDOT knew or should have known that the Tacoma Spur

5   Property was contaminated at the time that it purchased the two parcels, and WSDOT actively

6   contributed to the release of hazardous substances from that property.

7               *1.      WSDOT Cannot Establish the Third Party Defense.*

8               Under the third party defense, WSDOT must establish "by a preponderance of the

9   evidence" that the release and resulting damages were caused ***solely by*** an act or omission of a

10  third party other than "one whose act or omission occurs in connection with a contractual

11  relationship." [6]  42 U.S.C. § 9607(b)(3) (emphasis added).  WSDOT must then demonstrate that

12  it "exercised due care with respect to the hazardous substance concerned" and took "precautions

13  against foreseeable acts or omissions."  *Id.*

14              Here, WSDOT cannot prove that the releases were caused solely by another party,

15  because WSDOT itself caused releases of PAHs and other hazardous substances by installing the

16  DA-1 drainage system, creating what Ecology identified as "one of the primary pathways of

17  coal-tar contaminant migration to the waterway."  (Ex. 43 at 24000532.01; SOF ¶¶ 18, 19; *see*

18  *also* Part I.C, *infra*.)  In fact, WSDOT was the only party in charge of construction activities at

19  the Tacoma Spur Property, had purchased and exercised control over the property where the coal

20  tar contamination was present, and installed the DA-1 drainage system in an area where

21  "considerable coal tar contamination" was present.  (January 28, 1988 meeting agenda between

22  WSDOT and Hart Crowser (Ex. 60 at 77000653-54)).  And, after the DA-1 drainage system was

---

[6]      The current owner of previously contaminated land ordinarily cannot assert a third party defense because the term "contractual relationship" is defined to include "land contacts, deeds, easements… or other instruments transferring titles."  42 U.S.C. § 9601(35)(A); *United States v. Domenic Lombardi Realty, Inc.,* 204 F. Supp. 2d 318, 332 (D.R.I 2002).  However, WSDOT argues it is entitled to the exceptions set forth in 42 U.S.C. § 9601(35)(A) for "innocent landowners" and property acquired by eminent domain.  Even if WSDOT were able to prove that it falls within these exceptions, its third party defense still fails for the reasons set forth in Part I.D.1, *infra*.  Moreover, WSDOT cannot establish that it is an "innocent landowner" because, as described in Part I.D.2, *infra*, it cannot show that it "had no reason to know" of the existence of hazardous substances at the Site.  *See* 42 U.S.C. § 9601(35)(A)(i).

1    installed – as early as April 14, 1989 – WSDOT knew coal tar was seeping into the french drain

2    and catch basins and migrating to the Thea Foss Waterway.  (Ex. 40).  As stated by the court in

3    *Lewis Operating Corporation*,"[i]f a landowner actively spreads contaminated soil from one area

4    of a [] site to another, as was done here, that landowner has 'released' contaminants onto the

5    land," and is not entitled to the third party defense.  *Lewis Operating Corp. v. United States*, 533

6    F. Supp. 2d 1041, 1046 (C.D. Cal. 2007); *see also Acme Printing Ink Co. v. Menard, Inc.*, 870 F.

7    Supp. 1465 (E.D. Wis. 1994) (denying third party defense because defendant's excavation of site

8    caused barrels of waste to be unearthed and ruptured); *United States v. Honeywell Int'l, Inc.*. 542

9    F. Supp. 2d 1188, 1201 (E.D. Cal. 2008) (denying third party defense to developer who

10   excavated and graded land, which contributed to the release of hazardous substances).

11          Nor can WSDOT establish that it exercised due care or took adequate precautions.  Due

12   care requires that a defendant "demonstrate that it took necessary steps to prevent foreseeable

13   adverse consequences arising from the pollution at the site," including "those steps necessary to

14   protect the public from a health or environmental threat."  *United States v. A&N Cleaners &*

15   *Launderers, Inc.*, 854 F. Supp 229, 238 (S.D.N.Y. 1994).  A defendant whose actions exacerbate

16   the environmental threat cannot satisfy the due care standard.  *Franklin County Convention*

17   *Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 548 (6th Cir. 2001).  In this

18   case, not only did WSDOT fail to take precautions against the foreseeable spread of pre-existing

19   soil and groundwater contamination by its DA-1 drainage system, it also took over fourteen

20   years to resolve the problem after being directly informed of its existence and ignoring state and

21   federal requests to address the issue.  (SOF ¶¶ 14-31.)  This behavior cannot qualify as due care

22   and adequate precaution under the third party defense.  *See Franklin County*, 240 F.3d at 548 (no

23   due care where defendant immediately ceased work upon discovering the hazardous substances,

24   but allowed a "significant amount of creosote to migrate approximately forty-five feet, through

25   an open sewer trench."); *Idylwoods Assocs. v. Mader Capital, Inc.*, 956 F. Supp. 410, 419-20

26   (W.D.N.Y. 1997) (no due care where during a period of "uncooperation and inactivity," the

27   contamination spread to a neighboring creek increasing remediation costs); *Westfarm Assocs.*

PLAINTIFF THE UNITED STATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY
08CV5722  - 19-

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1    *Ltd. P'ship v. Wash. Suburban Sanitary Comm'n*, 66 F.3d 669, 682-83 (4th Cir. 1995) (rejecting

2    third party defense and holding that "WSSC had the power to abate the foreseeable release of

3    PCE, yet failed to exercise that power.").

    2.    *WSDOT Cannot Establish the "Contiguous Properties" Exception to*
4          *Owner/Operator Liability.*

5        WSDOT is unable to assert an affirmative defense under 42 U.S.C. § 9607(q).  This

6    defense is limited to instances where a property is contaminated "solely by reason" of

7    contamination migrating from a contiguous property.  The Tacoma Spur Property was already

8    contaminated before and after WSDOT excavated it.  (SOF ¶ 14).  And even if this defense was

9    available to WSDOT, it is unable to prove under Section 107(q) that (1) it did not "cause,

10   contribute, or consent to the release or threatened release," (2) it took "reasonable steps" to stop

11   any continuing release, (3) it provided "full cooperation" to authorities, and (4) that at the time

12   that it purchased the property it "conducted all appropriate inquiry" into previous ownership and

13   uses of the property and it "did not know or have reason to know that the property was or could

14   be contaminated by a release or threatened release of hazardous substances" from adjoining

15   properties.  42 U.S.C. § 9607(q).

16       As described above, WSDOT cannot meet elements (1) or (2) because it actively

17   contributed to the release of hazardous substances from its property, and cannot meet elements

18   (3) or (4) because it allowed the release of hazardous substances from its DA-1 drainage system

19   to continue for several years and failed to cooperate with Ecology and EPA in remedying the

20   problem.  (SOF ¶¶ 19-31.)  Nor can WSDOT prove by a preponderance of the evidence that it

21   "conducted all appropriate inquiry" into previous ownership and uses of the property and it "did

22   not know or have reason to know that the property was or could be contaminated."  At the time

23   of WSDOT's purchase of the first portion, not only was the Tacoma Spur Property located in a

24   heavily industrialized area, but the Commencement Bay Site (including the surrounding

25   industrial area) had already been named one of the ten highest priority hazardous waste sites in

26   the nation. (Peterson Lee Decl. ¶ 10); *see also WSDOT v. EPA*, 917 F.2d 1309, 1312 (D.C. Cir.

1    1990).  Moreover, WSDOT had direct knowledge that a coal gasification plant had operated in

2    the area prior to purchasing the second portion in July of 1984.  (*See* Ex. 6 at THEA-

3    MISC001009 ("the parties acknowledge that a manufactured gas facility was once operated in

4    the approximate location of said property"); *cf. In re Hemingway Trans., Inc. v. Kahn*, 174 B.R.

5    148 (Bankr. D. Mass. 1994) (no innocent landowner defense where defendant failed to seek

6    further information about property despite its close proximity to a Superfund site).[7]

7    Finally, WSDOT has admitted it conducted *no* inquiries into the previous uses of the

8    property prior to the initial purchase in 1982 (Ex. 5 at 14:10-19, 16:1-p.18:15), let alone conduct

9    "all appropriate inquiries" as required to set forth a defense under 42 U.S.C. § 9607(q).  *Cf.*

10   *Foster v. United States*, 922 F. Supp. 642, 657 (D.D.C. 1996) (plaintiff did not qualify as an

11   innocent landowner where it conducted no inquiry regarding possible contamination at the site at

12   the time of its acquisition in 1985); *United States v. W.R. Grace & Co.*, 280 F. Supp. 2d 1135,

13   1147-48 (D. Mont. 2002) (no innocent landowner defense established where plaintiff "did not

14   point to facts that show it made any inquiry into the previous ownership and uses of the property,

15   let alone 'all appropriate inquiry.'").  As WSDOT cannot establish any, much less all, of the

16   elements necessary to set forth a defense under Section 107(q), summary judgment on liability is

17   appropriate.

18   **II.     WSDOT IS PRECLUDED FROM RELITIGATING ISSUES IT HAS ALREADY
           TRIED AND LOST IN STATE COURT.**

19   As a final and independent basis for summary judgment, WSDOT has already fully

20   litigated its liability in connection with the Tacoma Spur Property and the DA-1 drainage system

21   in Washington State Superior Court and lost.  Under the doctrine of "issue preclusion," the state

22   court's judgment and findings of fact and law are conclusive against WSDOT, and WSDOT is

---

[7]      Very little case law exists on the contiguous properties defense set forth in 42 U.S.C. § 9607(q).  Because both Section 107(q) and the innocent landowner defense under Section 101(35)(A)(i) require that the defendant make "all appropriate inquiry" into previous land uses and have "no reason to know" of the contamination, this motion relies on authority applying the innocent landowner defense.

1    precluded from attempting to re-litigate the same factual issues in this case.[8]

2         Pursuant to 28 U.S.C. § 1738, which requires federal courts to accord full faith and credit

3    to state court proceedings, federal courts must "give preclusive effect to state-court judgments

4    whenever the courts of the State from which the judgments emerge would do so." *Allen v.*

5    *McCurry*, 449 U.S. 90, 96 (1980); *see Albano v. Norwest Financial Hawaii, Inc.*, 244 F.3d 1061,

6    *cert. denied,* 122 S. Ct. 505 (2001); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).

7    Under Washington law, when an issue of fact or law is actually litigated and decided by a valid

8    and final judgment, and the decision is essential to the judgment, the resolution of that issue is

9    conclusive as to the losing party in later cases. *Nielson v. Spanaway Gen. Med. Clinic*, 135

10   Wash. 2d 255, 262-63 (1998).  The four criteria to invoke collateral estoppel are: 1) the issue

11   decided in the first action is identical with the one presented in the second action; 2) the first

12   action ended in a final judgment on the merits; 3) the party against whom collateral estoppel is

13   asserted was a party to the first action; and 4) application of the doctrine does not work an

14   injustice. *Id. See also In re Diamond*, 285 F.3d 822, 826 (9th Cir. 2002).  This case meets all

15   four criteria.

16        First, as demonstrated by the pleadings, motion practice, and orders, the material facts

17   presented by this motion are identical to the factual issues resolved by the Superior Court.[9] (Ex.

18   16 at 3-5 (Superior Court findings of fact regarding the "Tacoma Coal Gas Plant Site" and the

19   "DA-1 line"); Exs. 52-54 (summary judgment order, memorandum opinion, and final

20   judgment).)  Second, after entering summary judgment against WSDOT on its liability for the

21   DA-1 drainage system on November 10, 2008, the state court issued its findings of fact and

22   conclusions of law against WSDOT on April 30, 2009.  (Ex. 16.)  This judgment is sufficient to

---

[8]        The form of issue preclusion relevant here is referred to as non-mutual offensive collateral estoppel.  *See generally* C. WRIGHT, A. MILLER & E. COOPER, Federal Practice and Procedure § 4464, at 702-08 (2002).

[9]        The Model Toxics Control Act ("MTCA") was "heavily patterned" after CERCLA and its amendments, *Bird-Johnson Corp.*, 119 Wash. 2d at 427, and its liability provisions are virtually identical.  *See* WASH. REV. CODE ANN. § 70.105D.04; *see also Asarco Inc. v. Dep't of Ecology*, 145 Wash. 2d 750, 756 (Wash. 2002) ("MTCA was modeled on CERCLA, and we have found CERCLA case law persuasive in interpreting MTCA.").

1  trigger issue preclusion, despite the existence of an appeal. *Nielson*, 135 Wash. 2d at 264, 956

2  P.2d at 316; *Riblet v. Ideal Cement Co.*, 57 Wash. 2d 619, 621 (1961).  Third, WSDOT was the

3  defendant and was represented by the same counsel in both cases.  (*See* Exs. 52-54, and 16.)

4      And fourth, there is no injustice to WSDOT in preventing them from re-litigating issues

5  that they had a full and fair opportunity to litigate in state court.  *See Nielson*, 135 Wash. 2d

6  at 265 ("injustice" inquiry focuses on whether parties in earlier case had "a full and fair

7  opportunity to litigate their claim in a neutral forum"); *see also Albano,* 244 F.3d at 1063 (res

8  judicata applied against party who had opportunity to participate in state court proceedings that

9  led to judgment against party); *Friends of Earth v. Hall*, 693 F. Supp. 904, 920 (W.D. Wash.

10  1988) (same).  In fact, issue preclusion will protect the United States from the burden of re-

11  litigating an identical issue, promote judicial economy by preventing needless litigation, and

12  promote justice by preventing the possibility of an inconsistent judgment.  *Five Platters*, 838

13  F.2d at 329 (by preventing second court from rendering inconsistent judgment, offensive

14  collateral estoppel promotes confidence in the accuracy of judicial determinations).  For these

15  reasons, this and other courts have applied collateral estoppel at the request of the United States

16  in CERCLA cases where, as here, the issue of liability had been previously resolved in another

17  action.  *E.g.* Order on United States' Mot. for Summ. J. on Defs.' Liability, *United States et. al.*

18  *v. Alexander et al.*, No. C02-5269RJB (W.D. Wash. 2004); *United States v. Simon Wrecking,*

19  *Inc.*, 481 F. Supp. 2d 363, 368 (E.D. Pa. 2007) (noting that "relitigating liability now would be a

20  waste of judicial resources, requiring this Court to go over exactly the same ground covered in

21  the Contribution Case"); *United States v. Horne*, No. 05-0497, 2006 WL 290591, *2 (W.D. Mo.

22  Feb. 6, 2006); *United States v. Green*, 33 F. Supp. 2d 203, 215-16 (W.D.N.Y. 1998).

23      WSDOT may argue that the decision in *United States v. Mendoza*, 464 U.S. 154, 159-60

24  (1984) should be extended to prevent the application of collateral estoppel against a state agency

25  in this case.  In *Mendoza*, the Supreme Court held that due to the geographic breadth of

26  government litigation and the nature of issues litigated by the government, "a rule allowing non-

27  mutual collateral estoppel against the government in such cases [involving constitutional issues]

PLAINTIFF THE UNITED STATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY
08CV5722 - 23-

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1  would substantially thwart the development of important questions of law by freezing the first

2  final decision rendered on particular legal issues." *Id.* at 160.

3        Washington case law, however, has made it clear that the applicability of the *Mendoza*

4  decision in the context of state or local agencies is subject to a case specific determination.  *City*

5  *of Seattle, Executive Servs. Dep't v. Visio Corp.*, 108 Wash. App. 566, 577 (Wash. App. 2001)

6  (holding that collateral estoppel was proper against a local agency and rejecting applicability of

7  *Mendoza*).  In this particular case, the policy reasons underlying the *Mendoza* decision simply do

8  not apply because this motion asks the court to apply findings of fact, and not conclusions of

9  law; because those factual findings do not involve questions of policy unique to a government;

10  and because those factual findings do not implicate significant questions of state law.   The

11  application of collateral estoppel will not thwart Washington from developing important law or

12  policy.  *Mendoza*, 464 U.S. at 162-63.  Thus, WSDOT should be precluded from re-litigating its

13  liability for ownership and operation of the Tacoma Spur Property under Washington's well-

14  established doctrine of issue preclusion.

15  **CONCLUSION**

16        For the foregoing reasons, the Court should grant the United States' Motion for Partial

17  Summary Judgment as to the liability of WSDOT under CERCLA Section 107(a)(1) and

18  107(a)(2).

19

PLAINTIFF THE UNITED STATES' MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY
08CV5722  - 24-

UNITED STATES DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
P.O. Box 7611, Washington, D.C. 20044-7611

1    **RESPECTFULLY SUBMITTED**,

2

3                                         FOR THE UNITED STATES

4                                         IGNACIA S. MORENO
                                          Acting Assistant Attorney General
5                                         Environment and Natural Resources Division

6    Date:   May 27, 2010                 s/ Richard S. Greene
                                          Richard S. Greene
                                          Trial attorneys, Environmental Enforcement Section
7                                         Environment and Natural Resources Division
                                          P.O. Box 7611
8                                         Washington DC 20044-7611
                                          202-305-0260 (Laura Thoms)
9                                         202-514-4112 (Richard Greene)

10   Date:   May 27, 2010                 s/ Laura A. Thoms
11                                        Laura A. Thoms
                                          Trial attorneys, Environmental Enforcement Section
12                                        Environment and Natural Resources Division
                                          P.O. Box 7611
13                                        Washington DC 20044-7611
                                          202-305-0260 (Laura Thoms)
14                                        202-514-4112 (Richard Greene)

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF Participants:

Deborah Lee Cade
Attorney General's Office
Transportation and Public Construction Division
PO Box 40113
Olympia WA 98504-0133
360-753-6126
deborahc@atg.wa.gov

Ian A. Northrip
Attorney General's Office
Transportation and Public Construction Division
PO Box 40113
Olympia WA 98504-0133
360-753-1628
iann@atg.wa.gov

*Attorneys for Washington State Department of Transportation*

Dated: May 27, 2010                     s/ Richard S. Greene
                                        Richard S. Greene
                                        Trial Attorney, Environmental Enforcement Section
                                        Environment and Natural Resources Division
                                        United States Department of Justice