UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF TRANSPORTATION,

Defendant.

Case No. C08-5722RJB

ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the court on Defendant WSDOT's Motion for Partial Summary Judgment re Liability for Stormwater Discharge (Dkt. 56) and on the United States' Cross-Motion for Partial Summary Judgment re Liability for Stormwater Discharges (Dkt. 62). The court has considered the relevant documents and the remainder of the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. CERCLA STATUTORY SCHEME

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9601 *et seq*., was enacted to facilitate "expeditious and efficient cleanup of hazardous waste sites." *Carson Harbor Village, Ltd. v. Unocal Corp*., 270 F.3d 863, 880 (9th Cir. 2001). Its secondary purpose is to hold responsible parties accountable for cleanup efforts. *Id*. CERCLA accomplishes these goals by imposing strict liability on owners and operators of facilities where releases of hazardous substances occur. *Id*. at 870. This liability is joint and several, subject to statutory defenses set forth in 42 U.S.C. §9607(b). *See California v.*

*Montrose Chemical Corp. of California*, 104 F.3d 1507, 1518 n.9 (9th Cir. 1997).

Under CERCLA, the President's authority to initiate response actions is broad and may include removal or other remedial action pursuant to 42 U.S.C. §9604(a)(1). CERCLA and the National Contingency Plan (NCP) divide response actions into two categories: removal actions and remedial actions. *U.S. v. W.R. Grace & Co.*, 429 F.3d 1224, 1237 (9th Cir. 2005). Distinguishing between removal and remedial actions is critical under CERCLA because the requirements for remedial actions are more detailed and onerous. *See, e.g., W.R. Grace & Co.*, 429 F.3d at 1226 ("For example, a remedial action requires certain analysis of the costs and effectiveness of the remediation and also requires inclusion on the National Priority List. *See* 40 C.F.R. §§300.425(b)(1), 300.430(e)(7).").

To recover its costs for engaging in response actions, the EPA must prove as follows: (1) the site at which the actual or threatened release of hazardous substances occurred constitutes a "facility" under 42 U.S.C. §9601(9); (2) there was a "release" or "threatened release" of a hazardous substance; (3) the party is within one of the four classes of persons subject to liability under 42 U.S.C. §9607(a); and (4) the EPA incurred response costs in responding to the actual or threatened release. *See U.S. v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998); 42 U.S.C. §9607(a)(4)(A) (defendants may be held liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan").

The burden then shifts to the defendant to prove that the government's action in responding was inconsistent with the NCP. *Chapman*, 146 F.3d at 1169. To prove inconsistency with the NCP, the defendant must demonstrate that the response actions were arbitrary and capricious or otherwise not in accordance with law. *See Washington State Dept. of Transp. v. Washington Natural Gas Co.*, 59 F.3d 793, 802 (9th Cir. 1995). An agency's decision is arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of*

*U.S., Inc. v. State Farm Mut. Auto*., 463 U.S. 29, 43 (1983).

B. BACKGROUND

The area concerned in this litigation is the Commencement Bay-Nearshore Tideflats Superfund Site ("the Site" or "CB/NT") in Tacoma, Washington. The Site consists of several identified problem areas where hazardous substances have contaminated sediment, including the Thea Foss and Wheeler Osgood waterways. Dkt. 1, at 3-4. Due to the level of contamination in the water and sediment, the Site was placed on the first official National Priorities List of hazardous waste sites pursuant to CERCLA § 105, 42 U.S.C. § 9605. Dkt. 1, at 4.

On December 2, 2008, the United States of America ("U.S.") filed a complaint against the Washington State Department of Transportation ("WSDOT") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*. Dkt. 1. The U.S. seeks to recover, pursuant to 42 U.S.C. § 9607(a), its un-reimbursed costs incurred in response to releases and threatened releases of hazardous substances at the Thea Foss and Wheeler Osgood Waterway Problem Areas within the Commencement Bay-Nearshore Tideflats Superfund Site, located in Tacoma, Washington. Dkt. 1, at 8-9.

The complaint involves claims by the United States for response costs, past and future, from WSDOT, (1) for contamination at the Tacoma Spur (I-705) construction site; and (2) for contamination as a result of highway runoff from I-5, SR 705, and SR 509 highways. Dkt. 1. In addition, the U.S. seeks a declaratory judgment under 42 U.S.C. § 9613(g)(2), that WSDOT is jointly and severally liable for any future response costs incurred by the U.S. in connection with the Site. Dkt. 1, at 9. One of the bases of liability alleged against WSDOT is the ownership and operation of I-5, SR 705, and SR 509, and their storm drains. Dkt. 1, at 7.

The complaint alleges that WSDOT owned/owns and operated/operates I-5, SR 705, and SR 509 highways; and the drainage structures designed to drain runoff away from these highways and to discharge the runoff into the Thea Foss Waterway. Dkt. 1, at 7. The United States contends that the highway runoff from I-5, SR 705, and/or SR 509 contains hazardous substances, including phthalates, heavy metals, including cadmium, lead, zinc, and nickel, and petroleum hydrocarbons. Dkt. 1, at 7. The United States alleges that highway runoff containing hazardous substances is and

has been transported from I-5, SR 705, and SR 509 by drainage structures and disposed of in the Thea Foss and/or Wheeler Osgood Waterways. Dkt. 1, at 7.

In 1989, the United States, through the Environmental Protection Agency (EPA), contacted 133 potentially responsible parties (PRPs), including WSDOT, to begin directing remedial actions and recouping response costs associated with the Site. Dkt. 1, at 7. In May of 2003, the United States entered into consent decrees with over eighty PRPs (but not WSDOT) to provide funding and remedial action to facilitate clean-up of the Site. Dkt. 1, at 5. The United States alleges that, as of June 30, 2008, it has incurred at least $6.8 million in unreimbursed response costs in association with the Thea Foss and Wheeler Osgood Waterways, and that response costs will continue to mount in the future. Dkt. 1, at 7-8.

On February 6, 2009, WSDOT filed an answer and counterclaim against the United States. Dkt. 10. The counterclaim seeks contribution from the United States, pursuant to 42 U.S.C. § 9613(b) and (f) (CERCLA § 113), contending that (1) the United States Army Corps of Engineers (USACE), an agency of the United States, dredged the bottom of the Thea Foss waterway from 1902 until 1949, and permitted public and private entities to dredge the Thea Foss waterway between 1975 and 1983 and possibly in 1912 and 1915, thereby moving hazardous substances released by others and causing additional releases to the environment near the waterways; (2) until 1924, the USACE used the dredged material, which included hazardous substances, as fill near the waterways; (3) beginning in 1924, the USACE deposited the dredged material in Commencement Bay, further spreading the contaminated materials; (4) at least until 1940, the USACE deposited the dredged materials at a location near the mouth of the Thea Foss waterway, where it could easily re-enter and re-contaminate the waterway; and (5) WSDOT incurred costs of response for the Thea Foss site. Dkt. 10 at 15-18. WSDOT further alleges that the United States is liable to WSDOT for contribution under 42 U.S.C. § 9613(f) because the USACE meets the requirements of an "operator" under 42 U.S.C. § 9607(a)(2), an "arranger" under § 9607(a)(3), and a "transporter" under 42 U.S.C. § 9607(a)(4). Dkt. 10 at 19. On September 15, 2009, the court issued an order, dismissing that portion of WSDOT's counterclaim that sought contribution from the United States for costs assessed in a state case, *PacifiCorp Envtl. Remediation Co. v. Dep't of Transp.*, No. 07-2-

10404-1 (Wash. Sup. Ct. July 31, 2009), and permitted that portion of WSDOT's counterclaim for contribution under § 9613(f)(1) for response costs the United States is seeking against WSDOT under § 9607(a), to proceed. Dkt. 47.

C. MOTIONS FOR PARTIAL SUMMARY JUDGMENT

On April 8, 2010, WSDOT filed a motion for partial summary judgment, requesting that the court dismiss the United States' claim that WSDOT is liable for response costs incurred by the United States under CERCLA that are related to discharge of stormwater runoff from state highways. Dkt. 56.

WSDOT contends that:

> (1) discharges from the state highway stormwater collection systems are exempt from CERCLA liability because they are authorized by the Clean Water Act and are therefore federally permitted releases under 42 U.S.C. § 9601(10) and 42 U.S.C. § 9607(j);
> (2) WSDOT is not liable as a former or current owner of a facility because it does not hold title to the highway property;
> (3) WSDOT is not liable as an owner or operator of a facility because there was no discharge of hazardous substances into the environment on the highway facilities;
> (4) WSDOT is not liable under CERCLA as an operator because it lacks sufficient control over any contaminants or other materials that enter the highway stormwater runoff;
> (5) WSDOT is not liable under CERCLA as one who arranged for the disposal of a hazardous substance at the Thea Foss Waterway based on its operation of a stormwater system on state highways, because it lacks sufficient control over any contaminants or other materials that enter the stormwater, and lacks intent to dispose of hazardous substances; and
> (6) WSDOT is not liable under any theory because any contaminants released into highway storm drains are caused by the actions of third parties over whom WSDOT has no control, and WSDOT handles the storm drain system with due care.

Dkt. 56, at 5-6.

U.S. responds by filing a cross motion for partial summary judgment and asserting that WSDOT has admitted to the first three elements of liability and that undisputed evidence establishes the fourth. Dkt. 62, at 16. The U.S. specifically argues that: WSDOT has admitted that the United States has incurred costs in responding to release of hazardous substances at the CB/NT Superfund Site; WSDOT is liable as a current and former owner and operator under 42 U.S.C. §9607(a)(1) and (2); WSDOT is liable as arranger under 42 U.S.C. §9607(a)(3); and WSDOT cannot establish the affirmative defenses that releases were federally permitted or that it is entitled to the third party defense. Dkt. 62.

## II. DISCUSSION

A. LEGAL STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson*, *supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

B. DISCUSSION

To establish a *prima facie* case to recover its response costs under CERCLA §107, the United States must prove: (1) the site is a "facility"; (2) a "release" or "threatened release" of a

hazardous substance occurred; (3) the government incurred costs in responding to the release or threatened release; and (4) the defendant is the liable party under 42 U.S.C. §9607(a). *U.S. v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998); 42 U.S.C. §9607(a)(4)(A) (defendants may be held liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan"). 42 U.S.C. §9607(a) authorizes the United States to recover its costs from four classes of responsible parties, three of which are relevant here: (1) current owners or operators of the facility, (2) owners or operators at the time of disposal of hazardous substances at or from the facility, and (3) entities who arrange for disposal of hazardous substances. *See* 42 U.S.C. §9607(a)(1), (2), and (3). Once the government presents a *prima facie* case for response costs, the burden shifts to the defendant to prove the government's response action was not consistent with the national contingency plan. *Chapman*, 146 F.3d at 1169.

The first three elements of the four element test in *Chapman* are not contested. However, WSDOT is challenging whether it falls under one of the four classes of responsible parties enumerated in 42 U.S.C. § 9607(a). The court will deal with arrangers liability under § 9607(a)(3) first.

**1. Arrangers**

WSDOT contends that it may not be held liable as an arranger under CERCLA because it did not have control over the release of hazardous substances and it did not intend to dispose of hazardous substances. Dkt. 56, at 13-19. WSDOT also contends that there is no evidence that it actually disposed of waste through the highway stormwater system. Dkt. 56, at 16.

The U.S. counters by arguing that WSDOT arranged for disposal by designing, constructing, and operating drainage systems whose sole function was to collect highway runoff and dispose of it into nearby water-bodies. Dkt. 62, at 27. The U.S. states that WSDOT had actual knowledge that the runoff that it was discharging contained hazardous substances. *Id*. The U.S. further states that WSDOT has the ability to redirect, contain, and treat its contaminated runoff. *Id*. at 28.

An arranger is defined as "any person who by contract, agreement, or otherwise arranged for disposal or treatment... of hazardous substances owned or possessed by such person, by any party or

entity, at any facility... owned or operated by another party or entity and containing such hazardous substances." 42 U.S.C. § 9607(a)(3). "A party that 'arranged for disposal' of a hazardous substance under § 9607(a)(3) does not become liable under CERCLA until there is an actual or threatened release of that substance into the environment." *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1077-78 (9th Cir. 2006). "[D]isposal activities that were legal when conducted can nevertheless give rise to liability under § 9607(a)(3) if there is an actual or threatened release of such hazardous substances into the environment." *Id*. at 1078. "[A]n entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington Northern and Santa Fe Railway Co. v. United States*, 129 S.Ct. 1870, 1879 (2009). "[T]he word 'arrange' implies action directed to a specific purpose." *Id.*

The court is persuaded by the U.S.'s arguments. WSDOT arranged for disposal of hazardous substances. It is undisputed that WSDOT designed the drainage systems at issue. Designing is an action directed to a specific purpose. The purpose was to discharge the highway runoff into the environment. WSDOT had knowledge that the runoff contained hazardous substances and there was an actual release of the hazardous substances into the environment. WSDOT argues that it did not have control of the hazardous substances. However, it did have control over how the collected runoff was disposed of. WSDOT did design the drainage system and, as noted by the U.S., WSDOT has the ability to redirect, contain, or treat its contaminated runoff. For the foregoing reasons, WSDOT is an arranger under 42 U.S.C. § 9607(a)(3).

Since the four elements for finding liability have been satisfied, WSDOT is a liable party under CERCLA, unless released by the defenses addressed below. The court need not reach the issue of whether WSDOT is an owner or operator under 42 U.S.C. § 9607(a)(1) and (2)in light of the court's finding under § 9607(a)(3).

**2. Federally Permitted Releases under 42 U.S.C. § 9607(j)**

WSDOT contends that two permits exempt it from CERCLA liability. Dkt. 56, at 8, 9. The first permit was issued under the federal Clean Water Act's National Pollutant Discharge Elimination System ("NPDES") program, which is administered by the Washington State Department of Ecology. *Id.* The second permit was a Municipal Permit, which was issued to the

larger Western Washington municipalities in 1995. *Id*. WSDOT indicates that it has "operated the storm drain system in compliance with NPDES permits since 1995." Dkt 56, at 10.

The U.S. responds by arguing that WSDOT has the burden of proof in establishing the affirmative defense that its releases were federally permitted and that the mere existence of a permit does not immunize WSDOT from liability. Dkt. 62, at 30. The U.S. states that even if WSDOT meets its burden of establishing that some of its post-permit releases are federally permitted, WSDOT may still be held liable under CERCLA for any releases that were not expressly permitted, exceeded the limitations of the permit, or occurred at a time when there was no permit. *Id*. The U.S. states that where there are both permitted and unpermitted releases, recovery of response costs related to a federally permitted release is prevented only where the defendant proves that the injury is divisible. *Id*. The U.S. also states that documents identify "instances of non-compliance with WSDOT's permit." Dkt. 62, at 31.

As a preliminary matter, the U.S. moves to strike Paragraph 6 of the Declaration of Kenneth Stone in Support of WSDOT's motion for partial summary judgment because his statement regarding compliance with permits is without foundation. Dkt. 62, at 31. The court should deny the motion to strike and the statement will be considered. The motion goes to the weight to be given the declaration.

42 U.S.C. § 9607(j) states that "[r]ecovery by any person (including the United States...) for response costs or damages resulting from federally permitted release shall be pursuant to existing law in lieu of this section." Federally permitted release includes discharges in compliance with a permit under section 1342 of Title 33. 42 U.S.C. § 9607(10).

It is undisputed that the permits do exist, but there is a dispute as to whether WSDOT is in compliance with the permits. Moreover, there is a question of the scope of the permits, whether there were releases outside that scope, and whether the injury is divisible. It is imprudent to decide this issue at this stage of litigation. Therefore, WSDOT's and the U.S.'s motions for partial summary judgment as to Federally permitted releases should be denied.

**3. Defenses under 42 U.S.C. § 9607(b).**

WSDOT argues that contaminants in stormwater are caused by third parties over whom it has no control. Dkt. 56, at 19. WSDOT states that the contamination was not caused by it, but by individuals who use the highways, and by other sources. Dkt. 56, at 20. WSDOT also contends that CERCLA requires that a party asserting the third party defense has handled the hazardous substances with due care and that it has met that standard by seeking permits. Dkt. 56, at 19. WSDOT states that the permits require the use of "all known, available, and reasonable technology" and requires that the pollutants be reduced to the "maximum extent practicable." *Id.* Therefore, WSDOT contends, it has used due care.

The U.S. counters by asserting that WSDOT has not established that the releases were caused "solely by" a third party, and that even if WSDOT established that the releases were caused solely by a third party, WSDOT failed to exercise due care prior to the issuance of the permits. Dkt. 62, at 32. Additionally, the U.S. argues that even after the 1995 permit was issued, WSDOT did not retrofit State Route 705 to add best methods and practices for treatment of stormwater. Dkt. 62, at 33.

CERCLA contains a third party defense which states in part,

> There shall be no liability under [42 U.S.C. § 9607(a)] for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by... an act or omission of a third party..., if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned... and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions.

42 U.S.C. § 9607(b).

There is a question of whether WSDOT exercised due care with respect to hazardous material. WSDOT contends that it did exercise due care because it sought and complied with permits. The U.S. contends that the permits do not establish that WSDOT acted with due care and that WSDOT did not act with due care in regard to pre-permit discharges. At this stage of litigation, there is not enough information or evidence presented to establish a due care standard under CERCLA. Moreover, as noted above, the divisiblity of discharges pre and post 1995 is in question.

For the foregoing reasons, the parties' motions for partial summary judgment regarding third party defense should be denied.

**4. State Sovereign**

WSDOT also argues that Federal courts have refused to impose CERCLA liability on agencies exercising the state's sovereign power non-negligently and that operation of a state highway system is a sovereign function of the state government. Dkt. 56, at 20-21. The U.S. responds by arguing that nothing in CERCLA supports WSDOT's argument. Dkt. 62, at 34-35. The U.S. states that CERCLA is a strict liability statute and that CERCLA applies to states and state agencies as well as private entities. Dkt. 62, at 35. The court is persuaded by the U.S.'s arguments. WSDOT has not cited to controlling law or a provision of CERCLA which supports its assertion, and the court has found none. Therefore, WSDOT's state sovereignty defense should not be allowed, and summary judgment should be entered in favor of the U.S. on this issue.

**5. Conclusion**

In summary, WSDOT is a potentially responsible person as an arranger under CERCLA. WSDOT's motion for partial summary judgment in regard to this issue should be denied, and the U.S.'s motion for partial summary judgment in regard to this issue should be granted. The parties' motion for partial summary judgment in regard to federally permitted releases and the third party defense should be denied for both parties. Finally, the U.S.'s motion for partial summary judgment regarding state sovereignty should be granted, and WSDOT's motion for partial summary judgment should be denied on that issue.

ORDER

Therefore, it is hereby **ORDERED** that

(1) The U.S.'s Motion to Strike is **DENIED**;

(2) Defendant WSDOT's Motion for Partial Summary Judgment re Liability for Stormwater Discharge (Dkt. 56) is **DENIED** as stated above;

(3) Plaintiff United States' Motion for Partial Summary Judgment re Liability for Stormwater Discharge (Dkt. 62) is **GRANTED IN PART AND DENIED IN PART** as stated above; and

(4) The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 7th day of June, 2010.

Robert J. Bryan
United States District Judge