1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES OF AMERICA,

    Plaintiff and Counterclaim Defendant,

    v.

WASHINGTON STATE DEPARTMENT
OF TRANSPORTATION,

    Defendant and Counterclaimant.

Case No. 08-5722RJB

ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT

    This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment on Liability Re: Coal Tar Contamination (Dkt. 80). The Court has considered the motion, responses, and the relevant documents herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    This is a CERCLA suit brought by the United States against the Washington State Department of Transportation ("WSDOT") to recover costs incurred in responding to releases of hazardous substances into the Thea Foss and Wheeler Osgood Waterways ("Waterways"), which are within the Commencement Bay/Nearshore Tidelands Superfund site ("CB/NT Superfund site" or "CB/NT"). Dkt. 80, p. 6-9. Defendant WSDOT is alleged to own or operate parcels of land ("Tacoma Spur Property") near the Waterways and within the CB/NT Superfund site. Dkt.

ORDER - 1

80, p. 9-11, Dkt. 86, p. 5-6.  On the Tacoma Spur Property, WSDOT built South A Street to

connect downtown Tacoma with Dock Street and the waterfront.  Dkt. 86, p. 2.  WSDOT

encountered a high water table during the construction of South A Street and built a "French

drain system" to protect the roadway from water damage.  *Id.*  The French drain system

connected to the street's stormwater drain, which then connected with the City of Tacoma storm

sewer system.  *Id.*  The City of Tacoma storm sewer system eventually drains into the Thea Foss

Waterway through the "West Twin" drain at the head of the waterway.  *Id.*

WSDOT alleges that the Washington State Department of Ecology discovered that coal

tar had migrated through the soil into the French drain system and into a catch basin.  Dkt. 86, p.

3.  The United States alleges that the drainage system installed by WSDOT acted as a pathway

for coal tar to be funneled into the Thea Foss Waterway, thus contaminating the Waterways.

Dkt. 80, p. 7.

On December 2, 2008, the United States filed this suit seeking recovery of response costs

incurred in the cleanup of the Waterways under CERCLA.  Dkt. 1.  On May 27, 2010, the United

States filed this motion for partial summary judgment regarding coal tar contamination.  Dkt. 80.

The United States is seeking judgment as to liability for coal tar contamination under CERCLA.

*Id.*

## II. DISCUSSION

**A. LEGAL STANDARDS**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)(nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty

Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors

Association*, 809 F.2d 626, 630 (9th Cir. 1987).

   The determination of the existence of a material fact is often a close question. The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect.

Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor

of the nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party. The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*.

Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

   The Comprehensive Environmental Response, Compensation, and Liability Act of 1980,

as amended ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, was enacted to facilitate "expeditious and

efficient cleanup of hazardous waste sites." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270

F.3d 863, 880 (9th Cir. 2001). Its secondary purpose is to hold responsible parties accountable

for cleanup efforts. *Id*. CERCLA accomplishes these goals by imposing strict liability on owners

and operators of facilities where releases of hazardous substances occur. *Id.* at 870. This liability

is joint and several, subject to statutory defenses set forth in 42 U.S.C. §9607(b). *See California*

*v. Montrose Chemical Corp. of California*, 104 F.3d 1507, 1518 n.9 (9th Cir. 1997).

To recover its costs for engaging in response actions, the EPA must prove: (1) the site at

which the actual or threatened release of hazardous substances occurred constitutes a "facility"

under 42 U.S.C. §9601(9); (2) there was a "release" or "threatened release" of a hazardous

substance; (3) the party is within one of the four classes of persons subject to liability under 42

U.S.C. §9607(a) [CERCLA section 107(a)]; and (4) the EPA incurred response costs in

responding to the actual or threatened release. *U.S. v. Chapman*, 146 F.3d 1166, 1169 (9th Cir.

1998); United States v. Northeastern Pharmaceutical & Chemical Co., Inc., 810 F.2d 726, 743

(8th Cir. 1986)("NEPACCO"); 42 U.S.C.§9607(a)(4)(A) (defendants may be held liable for "all

costs of removal or remedial action incurred by the United States Government or a State or an

Indian tribe not inconsistent with the national contingency plan").  A party may be a potential

responsible party under CERCLA section 107(a) if they fall under one of four categories: current

owner and operator - section 107(a)(1); former owner or operator - section 107(a)(2); arranger -

section 107(a)(3); or transporter - section 107(a)(4). 42 U.S.C. § 107(a).  The United States is

arguing that WSDOT is liable under section 107(a)(1) or (2), but is reserving any other theories

of liability (i.e. liability under sections 107(a)(3) & (4)).  Dkt 80, p. 18 n. 3.

**B. OWNER/OPERATOR LIABILITY**

Under CERCLA section 107(a)(1), a party may be liable if it is the owner and operator of

a vessel or a facility.  42 U.S.C. § 9607(a)(1).  The term "facility" means (A) any building,

structure, installation, equipment, pipe or pipeline… or (B) any site or area where a hazardous

substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.  42

U.S.C. § 9601(9).  Additionally, a party may be liable if at the time of disposal of any hazardous

substance it owned or operated any facility at which such hazardous substances were disposed of.  42 U.S.C. § 9601(a)(2).

Plaintiff argues that WSDOT has admitted the first three elements in its answer and discovery responses, and that the fourth element is established by undisputed factual evidence that WSDOT is the current owner of the Tacoma Spur property.  Dkt. 80, p. 19.  Plaintiff also states that there is undisputed factual evidence that establishes that WSDOT was the owner and operator of that property and of the DA-1 drainage system[1] at the time that system disposed hazardous substances into the Waterway.  *Id*.  Therefore, Plaintiff contends, the Defendant is liable under CERCLA Section 107(a) as the current owner of contaminated property and as the owner and operator of that property at the time of discharge.  Dkt. 80, p. 18.

Defendant responds by asserting that it is not the owner or operator of the facility at the time the United State incurred costs.  Dkt. 86, p. 5.  Defendant asserts that the clean up by the United States involved the Thea Foss Waterway, not the Tacoma Spur Property, where no response costs were incurred, and that the Tacoma Spur Property is not the subject of the suit.  Dkt. 86, p. 5-10.  Defendant next argues that even if the highway property were a facility, WSDOT is not the owner of that property; the State of Washington is the owner.  Dkt. 86, p. 11.  Finally, the Defendant asserts that operation of the French drain for the purpose of removing groundwater does not make WSDOT an operator under CERCLA.  *Id*.

This motion regarding the issue of liability appears to partly turn on the scope of the word "facility."  Under CERCLA Section 107(a)(1), the owner and operator of a vessel or a facility is a liable party.  Under CERCLA Section 107(a)(2), any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous

---

[1]The Plaintiff uses the nomenclature "DA-1 drainage system" in its filings.  The Court will use the nomenclature "Tacoma Spur Property" generically to refer to both the drainage system and above ground structures.

substances were disposed of is potentially responsible.  Plaintiff contends that "ownership of one

portion of a 'facility' – whose boundaries are defined by the extent of contamination, not by

property lines – is sufficient to establish liability for response costs at that facility as a whole."

Dkt. 80, p. 19.  Plaintiff argues, in essence, that the entire CB/NT Superfund site is a facility and

that Defendant owns property within that Superfund site.  *See Id.*  Defendant asserts the opposite

argument; that the CB/NT Superfund site is not a facility for purposes of this action, the facility

at issue is the Thea Foss and Wheeler Osgood Waterway, which is not owned nor operated by

the Defendant.  Dkt. 86, p. 9-11.

While there is no directly relevant case law in the Ninth Circuit, the case of *U.S. v.*

*Township of Brighton*, 153 F.3d 307 (6th Cir. 1998), is particularly instructive.  The *Brighton*

case involved a 15 acre plot in Brighton Township.  *Brighton*, 153 F.3d at 310.  The land was

owned by Vaughan Collett, and later by Jack Collett.  *Id.*  The Township of Brighton contracted

with Vaughan Collett to use his land as a dump for the town's residents.  Specifically, three acres

in the southwest corner of the property were used as the township dump.  *Id.*  In 1994, the United

States brought suit against both the township and Jack Collett to recover response costs under

CERCLA after clean up of hazardous waste on the Collett property.  *Brighton*, 153 F.3d at 312.

The district court found that Collett and the township were jointly and severally liable for the full

amount of the response costs.  *Id.*  The township appealed the decision and argued that the

Brighton Township dump comprised only three acres in the southwest corner of the 15 acres

Collett property.  *Id.*  Therefore, the township argued, the government should have defined the

bounds of the site in a way that excluded the township dump, which did not contain hazardous

waste.  *Id.*

The *Brighton* court noted that CERCLA defines the term "facility" as "any site or area

where hazardous substances has been deposited, stored, disposed of, or placed, or otherwise

come to be located." *Brighton*, 153 F.3d at 312 (*citing* 42 U.S.C. § 9601(9)(B)).  The *Brighton*

court stated that:

> [their] task is to determine how broadly or narrowly the bounds of the "site" may
> be drawn.  At one extreme, the entire Collett property (or the entire county for
> that matter), could be defined as a facility based on the presence of a hazardous
> substance in one portion of it.  At the other extreme, the facility could be defined
> with such precision as to include only those specific cubic centimeters of Collett's
> property where hazardous substance were deposited or eventually found.  The
> first approach obviously would sweep too broadly, the second too narrowly.

*Brighton*, 153 F.3d at 312.  The court stated that the "words of the statute suggest that the bounds

of a facility should be defined at least in part by the bounds of the contamination."  *Brighton*,

153 F.3d at 313.  However, the court stated, "an area that cannot be reasonably or naturally

divided into multiple parts or functional units should be defined as a single 'facility,' even if it

contains parts that are non-contaminated."  *Id*.  The *Brighton* court concluded that the entire

Collett property was one facility because Collett used the entire property as a dump.  *Id*.  The

*Brighton* court supported this conclusion by stating that the facts show that local household and

commercial dumping was largely, but not completely, limited to the southwest corner of the

property; that refuse was moved around on the property; and that Collett placed materials from

non-residents and industries in other parts of the site.  *Id*.  Finally, the *Brighton* court noted that

"[i]f the township was only connected to the southwest corner, the appropriate place to draw that

distinction is in the divisibility analysis [of CERCLA], not in the bounding of the facility."  *Id*.

In this case, the United States defines facility as encompassing the entire CB/NT

Superfund site, while WSDOT defines facility as either the Waterway or the Tacoma Spur

Property.  The United States' asserted definition of facility is too broad.  If the Court was to

adopt the United States' definition of facility, then liability could be imposed broadly and on

persons not reasonably related to the contamination.  In other words, a property owner whose

property does not contain hazardous substance but is within such a "facility" could be found to

be an owner of the facility and thus liable under CERCLA for response costs. CERCLA was not intended to place the cost of clean up on persons who are not responsible for the contamination. *See U.S. v. Bestfoods*, 524 U.S. 51, 56 (1998)("those *actually* responsible for any damage, environmental harm, or injury from chemical poisons may be tagged with the cost of their actions.")

Under CERCLA, facility means any building, structure, installation, equipment, pipe or pipeline, or "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9)(A) & (B). Under the plain meaning of the statutory provision, both the Waterways and the Tacoma Spur Property could be considered facilities since hazardous substances are located at both sites. However, that does not mean the two sites combine into one site to form a single facility. In the *Brighton* case, the site at issue was owned by one person, Jack Collett. Moreover, the *Brighton* court found that the entire site was used for a common purpose, a dump. In this case, the CB/NT Superfund site appears to include the properties of several different owners, including WSDOT, and there appears to be no common purpose among the different owners. Excluding other properties and focusing on only the Waterways and the Tacoma Spur Property, it still appears that there are different owners and different purposes. Moreover, the Waterways and the Tacoma Spur Property are reasonably or naturally divided into multiple parts or functional units. For these reasons, the Waterways and the Tacoma Spur Property should be considered separate facilities.

Since they are separate facilities, the next step is to determine which facility might impose liability on the Defendant. It has not been argued nor evidence presented that WSDOT owns or operates the Waterways. Even if the Court assumes that WSDOT does own and operate the Tacoma Spur Property, it does not necessarily mean that it is liable as an owner or operator of a facility under CERCLA. The United States incurred response costs here in the Waterway,

but not on the Tacoma Spur Property.  The United States has not argued nor asserted that it has incurred response costs on the Tacoma Spur Property.

The law is unclear as to whether CERCLA requires that the response costs be incurred on the property owned or operated by a defendant, but CERCLA's purpose is to assign the cost of remediation to the party actually responsible for any damage, environmental harm, or injury.  *See Burlington Northern and Santa Fe Ry. Co. v. United States*, 129 S.Ct. 1870, 1874 (2009)("The Act was designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination"); *U.S. v. Bestfoods*, 524 U.S. 51, 56 (1998)("those *actually* responsible for any damage, environmental harm, or injury from chemical poisons may be tagged with the cost of their actions.").  CERCLA provides for liability to attach in four ways; current owner and operator, former owner or operator, arranger, and transporter.  42 U.S.C. § 9607(a).  CERCLA section 107(a)(1) states that the owner and operator of a facility is liable for response costs.  *Id*.  A facility is any building, structure, installation, equipment, pipe or pipeline... or any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.  42 U.S.C. § 9601(9).  If the Court was to take the view that response costs need not be incurred on the facility owned and operated by the defendant, then liability may be imposed on persons not related to the contamination, which is not the purpose of CERCLA.  Under a broad reading of the requirements of CERCLA as is advocated by the Plaintiff, a person owning and operating a building close to the clean up site (i.e. the Waterways) may be considered an owner and operator of a facility under CERCLA whether or not that person was responsible for contamination of the clean up site.  The Court believes that this is not what CERCLA intended.  The Court believes a better interpretation of the requirements of CERCLA is that for liability to attach to WSDOT under CERCLA section 107(a)(1), it must be the owner or operator of the facility in which the

United States incurred a response cost.  To allow otherwise would expose a party to liability

under CERCLA for merely holding property that fit the definition of facility whether or not that

party had any actual responsibility in contamination.  While this interpretation of CERCLA

section 107(a)(1) may seem narrow, it carries out the purpose of CERCLA by allowing liability

to attach to persons who dispose of hazardous materials into the environment under CERCLA

section 107(a)(3) or (4), but allows persons not responsible for contamination to be free of

liability.  In this case, WSDOT is not the owner or operator of the Waterways, and there were no

response costs incurred on the WSDOT owned Tacoma Spur Property.  Therefore, the United

States' motion for summary judgment as to the CERCLA section 107(a)(1) should be denied.

The foregoing analysis also applies to CERCLA section 107(a)(2) former owner or

operator liability.

Futhermore, the hazardous substance in this motion is coal tar and the facility is the

Tacoma Spur Property.  It is undisputed that coal tar was disposed of at the Tacoma Spur

Property.  However, the United States argues that the coal tar contaminated the Waterways

through the drainage systems installed at the Tacoma Spur Property.  Dkt. 80, p. 21-22.  WSDOT

contends that Waterways contamination is not due to the coal tar being disposed of through the

drainage system.  Instead, WSDOT argues that contamination resulted from urban stormwater

runoff.  Dkt. 86, p. 20.  There appears to be a genuine issue of material fact as to whether coal tar

was disposed of which resulted in removal and remedial actions costs.  As such, the United

States' motion for summary judgment as to CERCLA section 107(a)(2) should be denied.

For the foregoing reasons, the Plaintiff's motion for partial summary judgment as to

liability under CERCLA sections 107(a)(1) &(2) should be denied.  Since summary judgment as

to liability under CERCLA sections 107(a)(1) &(2) is denied, the Court declines to address the

arguments regarding affirmative defenses.

**C.  NONMUTUAL OFFENSIVE COLLATERAL ESTOPPEL**

The United States contends that WSDOT has fully litigated its liability in connection with the Tacoma Spur Property and drainage system in Washington State Superior Court and lost.  Dkt. 80, p. 26.  The United States argues that under the doctrine of "issue preclusion," the state's court's judgment and finding of fact and law are conclusive against WSDOT.  *Id*.  The United States specifically cites *Pacificorp Envtl. Remediation Co. v. WSDOT*, No. 07-2-10404-1 (Wash. Super. Ct. April 30, 2009) to support its argument that the issue of liability is precluded in this litigation.  Dkt. 27, p. 27.  WSDOT responds by arguing that judgment regarding a state law does not apply to a federal issue, and that federal law regarding collateral estoppel applies, not state law.  Dkt. 86, p. 12-20.

Nonmutual offensive collateral estoppel is estoppel asserted by a nonparty to an earlier action to prevent a defendant from relitigating an issue previously decided against the defendant.  *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326-332 (1979).  Trial courts are given broad discretion to determine when collateral estoppel should be applied.  *Id*. at 331.  "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where… the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel."  *Id*.  The *Parklane* court stated that application of offensive collateral estoppel may be unfair if: (1) the first action was for small or nominal damages and that future suits are not foreseeable; (2) the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant; or (3) the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.  *Id*. at 330-31.  Finally, the *Parklane* court notes that the defendant must have had a full and fair opportunity to litigate.  *Id*. at 328.

In this case, it would be unfair to the Defendant for the Court to apply offensive estoppel.

In the Superior court case, the issue was whether the Defendant violated the Model Toxics Control Act ("MTCA") RCW 70.105D, et seq., not whether it violated CERCLA.  The United States has admitted that the MTCA was "heavily patterned" after CERCLA, but it is not identical to CERCLA.  *See* Dkt. 80, p. 27 n. 9.  Therefore, the issues presented in this case may be different from the Superior court case.  Moreover, there are defenses or exemptions in CERCLA that are not found in the MTCA.  It would be unjust not to allow the Defendant to avail itself of these defenses.  Finally, WSDOT has not had the opportunity to fully and fairly litigate the CERCLA claims.  The Superior court case only litigated MTCA claims.  For the foregoing reasons, nonmutual offensive collateral estoppel should not be applied in this case and the Plaintiff's motion for partial summary judgment should be denied.

### III. ORDER

The Court does hereby find and **ORDER**:

(1)  Plaintiff's Motion for Partial Summary Judgment on Liability Re: Coal Tar Contamination (Dkt. 80) is **DENIED** only insofar as the motion was based on CERCLA section 107(a)(1) & (2); and

(2)  The Clerk is directed to send copies of this Order to all counsel of record and any party appearing *pro se* at said party's last known address.

DATED this 7th day of July, 2010.

Robert J. Bryan
United States District Judge

ORDER - 12