1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff and Counterclaim Defendant,

    v.

WASHINGTON STATE DEPARTMENT
OF TRANSPORTATION,

    Defendant and Counterclaimant.

Case No.  08-5722RJB

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY
JUDGMENT ON ARRANGER
LIABILITY FOR COAL TAR
DISCHARGES

      This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment on Arranger Liability Coal Tar Discharges (Dkt. 111).  The Court has considered the motion, responses, and the relevant documents herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      The underlying facts of this case are well known by the Court and the parties and will not be repeated herein.  On October 1, 2010, Plaintiff United States filed a motion for partial summary judgment on arranger liability for coal tar discharges.  Dkt. 111.  Plaintiff asserts that the Washington State Department of Transportation ("WSDOT") is a potential responsible party under CERCLA Section 107(a)(3) as an arranger for disposal of hazardous substances based on WSDOT's design, installation, and operation of a drainage system that collected and conveyed

1    coal tar-contaminated water into the Thea Foss Waterway and that the United States has incurred

2    costs in responding to the releases and threatened releases of hazardous substances at the

3    Waterway.  Dkt. 111, p. 16.  Plaintiff asserts that there is no dispute that WSDOT designed,

4    constructed, and installed the DA-1 drainage system for the specific purpose of directing

5    groundwater away from the Tacoma Spur Property and disposing it into the Thea Foss

6    Waterway.  Dkt. 111, p. 18.

7         Defendant responds by arguing that there is a genuine issue of material fact as to whether

8    the alleged coal tar disposal resulted in the United States' response costs.  Dkt. 121, p. 10.

9    Defendant asserts that the United States must establish a causal connection between the

10   contamination in the Waterway and the coal tar located at the Tacoma Spur Property, and that

11   WSDOT did not intend to dispose of the coal tar in the Waterway.  Dkt. 121, p. 10-23.

12        Plaintiff also asserts that WSDOT has failed to establish an affirmative defense as a

13   matter of law.  Dkt. 111, p. 22.  Plaintiff argues that WSDOT actively contributed to the release

14   of hazardous substance from the Tacoma Spur Property, and WSDOT failed to act with due care

15   once it knew coal tar contamination was migrating from the Tacoma Spur Property to the Thea

16   Foss Waterway.  Dkt. 111, p. 22.  Defendant argues that there is a genuine issue of material fact

17   as to whether it acted reasonably in regards to the coal tar, and that a third party defense involves

18   questions of fact.  Dkt. 121, p. 23.

19                                    **II. DISCUSSION**

20   **A.  SUMMARY JUDGMENT LEGAL STANDARD**

21        Summary judgment is proper only if the pleadings, the discovery and disclosure materials

22   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

23   movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

24

1   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

2   showing on an essential element of a claim in the case on which the nonmoving party has the

3   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

4   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

5   for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

6   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

7   metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a

8   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

9   requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty*

10  *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

11  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

12          The determination of the existence of a material fact is often a close question. The court

13  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

14  e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect.*

15  *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor

16  of the nonmoving party only when the facts specifically attested by that party contradict facts

17  specifically attested by the moving party. The nonmoving party may not merely state that it will

18  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

19  to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

20  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

21  be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

22          The Comprehensive Environmental Response, Compensation, and Liability Act of 1980,

23  as amended ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, was enacted to facilitate "expeditious and

24

ORDER - 3

1  efficient cleanup of hazardous waste sites." *Carson Harbor Village, Ltd. v. Unocal Corp.*, 270

2  F.3d 863, 880 (9th Cir. 2001).  Its secondary purpose is to hold responsible parties accountable

3  for cleanup efforts.  *Id*.  CERCLA accomplishes these goals by imposing strict liability on

4  owners and operators of facilities where releases of hazardous substances occur.  *Id*. at 870.  This

5  liability is joint and several, subject to statutory defenses set forth in 42 U.S.C. §9607(b).  *See*

6  *California v. Montrose Chemical Corp. of California*, 104 F.3d 1507, 1518 n. 9 (9th Cir. 1997).

7      To recover its costs for engaging in response actions, the EPA must prove as follows: (1)

8  the site at which the actual or threatened release of hazardous substances occurred constitutes a

9  "facility" under 42 U.S.C. §9601(9); (2) there was a "release" or "threatened release" of a

10  hazardous substance; (3) the party is within one of the four classes of persons subject to liability

11  under 42 U.S.C. §9607(a); and (4) the EPA incurred response costs in responding to the actual or

12  threatened release. *See U.S. v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998); 42 U.S.C.

13  §9607(a)(4)(A) (defendants may be held liable for "all costs of removal or remedial action

14  incurred by the United States Government or a State or an Indian tribe not inconsistent with the

15  national contingency plan").

16  **B. ARRANGER LIABILITY UNDER CERCLA SECTION 107(a)(3)**

17      It is undisputed that the Thea Foss Waterway is a facility, that there was a release of

18  hazardous substance, and that the EPA incurred response costs.  It is, however, disputed as to

19  whether WSDOT is a party within one of the four classes under CERCLA section 107(a),

20  specifically whether WSDOT is an arranger under CERCLA section 107(a)(3).

21      To establish a party is an arranger, plaintiff must show that the defendant is a "person

22  who by contract, agreement, or otherwise arranged for disposal or treatment… of hazardous

23  substances owned or possessed by such person…."  42 U.S.C. § 9607(a)(3).  It is undisputed that

24

ORDER - 4

1    WSDOT constructed the DA-1 drainage system which disposed of its collected contents into the

2    Thea Foss Waterway.  Dkt. 111, p. 18.  It is also undisputed that coal tar contamination migrated

3    from the Tacoma Spur Property into the DA-1 drainage system and was disposed of into the

4    Thea Foss Waterway.  *Id.*

5          Defendant disputes that it is an arranger under CERCLA section 107(a)(3) because

6    Plaintiff has not established a connection between the hazardous substances found at the Tacoma

7    Spur Property and the response costs that were incurred at the Waterway.  Dkt. 121, p. 11.

8    Defendant cites *Kalamazoo River Study Group v. Rockwell International Corporation*, 171 F.3d

9    1065, 1068 (6th Cir. 1999) to support its argument that the United States needs to prove a causal

10   link between the response costs and the hazardous substance found at the Tacoma Spur Property.

11   Dkt. 121, p. 11.  Cases in other circuits, however, have held that causation need not be proven.

12   *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 721 (2nd Cir. 1993)("*Alcan II*");

13   *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 265 (3rd Cir. 1992)("*Alcan I*"); *Dedham*

14   *Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1152-54 (1st Cir. 1989); and *United*

15   *States v. Monsanto Co.*, 858 F.2d 160, 170 (4th Cir. 1988).  CERCLA was intended to encourage

16   responsible parties to remediate hazardous facilities without delay, and to encourage early

17   settlement between potentially responsible parties and environmental regulators.  *California*

18   *Department of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 915 (9th

19   Cir. 2010).  Affixing liability at an early stage without showing causation would be consistent

20   with the purpose of CERCLA.  While causation is not required to show liability under CERCLA

21   section 107(a), many courts have recognized the "common law gloss" that courts  have placed on

22   CERCLA strict liability by adding divisibility to the statutory framework of joint and several

23   liability.  *See California Department of Toxic Substances Control v. Alco Pacific, Inc.*, 217

24

F.Supp.2d 1028, 1035 (C.D. Cal. 2002); *Alcan II*, 990 F.2d at 723.  Also, "the choice as to when to address divisibility and apportionment are questions best left to the sound discretion of the trial court in the handling of an individual case."  *Alcan II*., 990 F.2d at 723.  It appears that some courts in this circuit have applied a burden-shifting causation test at an early stage as part of finding liability.  In *Castaic Lake Water Agency v. Whittaker Corp*., 272 F.Supp.2d 1053 (C.D. Cal. 2003), the court applied a causation test early in its analysis.

> [I]n  a two-site CERCLA case, the plaintiff meets its burden on summary judgment if it (a) identifies contaminant at its site, (b) identifies the same (or perhaps a chemically similar) contaminant at the defendant's site, and (c) provides evidence of a plausible migration pathway by which the contaminant could have traveled from the defendant's facility to the plaintiff's site.  If the plaintiff meets this burden, the defendant must then proffer evidence sufficient to create a genuine issue of fact as to its ability to disprove causation.

*Castaic Lake Water Agency*, 272 F.Supp.2d at 1066; *see also City of Moses Lake v. United States*, 458 F.Supp.2d 1198, 1237 (E.D. Wash. 2006) (*Citing Westfarm Assocs. Limited Partnership v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669 (4th Cir. 1995)("Once plaintiff has proven a *prima facie* case, the burden of proof falls on the defendant to disprove causation in a CERCLA case").  Of note, the *Castaic* court declined to use the *Kalamazoo* causation standard.  *Castaic Lake Water Agency*, 272 F.Supp.2d at 1066, n. 15.  This Court finds the reasoning for not adopting the Kalamazoo causation standard persuasive.  The *Castaic* court stated that burden shifting approach is in keeping with CERCLA's broad remedial purpose and is consistent with the "minimum causal nexus" most courts require under CERCLA.  *Castaic Lake Water Agency*, 272 F.Supp.2d at 1066.

There is one more causation standard which may be relevant in this case.  In *Boeing Co. v. Cascade Corp*., 207 F.3d 1177 (9th Cir. 2000), the court declined to use a "but for" causation standard in its liability analysis.  *Id*. at 1185.  The *Boeing* court examined two polluters in a

1   contribution action.  The court concluded that,

2       [I]n the special case of causal overdetermination, i.e. where either polluter's
        conduct would have caused the same response cost to be incurred in the same
3       amount, and the conduct was of substantially equal blameworthiness, the proper
        construction of the causation requirement in the statute is that both polluters
4       should be treated as having caused the response cost.  In this special case,
        pollution is properly treated under the statute as having "caused" the response cost
5       even though it was not a ["but for" cause] of the response cost.

6   *Id*. at 1185.  In *Boeing*, it was an action, specifically, for contribution under 42 U.S.C.

7   §9613(f)(1).  This present action is for response costs under 42 U.S.C. §9607(a)(4) and for

8   contribution.  Whether using the *Boeing* standard or the *Castaic* standard, the results would be

9   the same.  Moreover, given the body of case law and the purpose of CERCLA, the causation

10  standard in *Castaic* appears to be the proper standard and consistent with *Boeing*.

11      This is arguably a two-site case; the Tacoma Spur Property and the Thea Foss Waterway.

12  Coal tar exists on the Tacoma Spur Property which is owned by WSDOT.  PAH, a hazardous

13  substance and a substance found in coal tar, was found in the sediment of the Thea Foss

14  Waterway.  Plaintiff incurred costs to remediate the hazardous substances found in the Thea Foss

15  Waterway.  Plaintiff has alleged a plausible migration pathway through the DA-1 drainage

16  system.  Enough has been shown by the Plaintiff to impose arranger liability on Defendant under

17  the *Castaic* standard.

18      Under the *Boeing* standard, Plaintiff has shown that there was PAH in the Thea Foss

19  Waterway and that PAH could have come from the Tacoma Spur Property.  Plaintiff also has

20  incurred response costs related to the PAH.  While it is not a "but for" causation, the showing is

21  enough to satisfy the *Boeing* standard and create arranger liability.  Plaintiff's motion for partial

22  summary judgment should be granted as to arranger liability.

23      The trial court may determine when to apply the causation standard based on the

24

ORDER - 7

particular facts of the case.  *Alcan II*., 990 F.2d at 723.  In this case, where there are several

potentially responsible parties, widespread contamination, involving a mix of hazardous

substances at multiple sites, it would be consistent with the purposes of CERCLA to first fix

liability and then determine any divisibility/apportionment defense based on causation.  It would

also be a more efficient use of the Court's resources to first affix liability and then address

divisibility/apportionment at a later date when the facts of the case are fully developed.  To prove

liability under CERCLA section 107(a)(3), the Plaintiff need only show that there was a

contaminant at the site, that there is a chemically similar contaminant on the Defendant's site,

and that there is a plausible migration route.  The Defendant may then provide evidence to

disprove causation, and prove issues of divisibility and apportionment.  Since this approach was

not briefed by either party, the Court will not address whether Defendant provided evidence to

disprove causation under the standards stated above.  This issue may be raised by either party in

the future.

　　　For the foregoing reasons, the Plaintiff's motion for summary judgment as to arranger

liability should be granted.

**C. AFFIRMATIVE DEFENSE**

　　　Under the third party defense, a party must "establish by a preponderance of the evidence

that the release or threat of release of a hazardous substance and the damages resulting therefrom

were caused solely by… an act or omission of a third party."  42 U.S.C. § 9607(b)(3).  A party

must establish by a preponderance of the evidence that it exercised due care with respect to the

hazardous substances and took precautions against foreseeable acts or omissions of any such

third party.  *Id*.

　　　Defendant argues that there is a question of whether WSDOT acted with due care is an

issue of fact.  Dkt. 121, p. 23.  Defendant asserts that it took all reasonable steps to manage the contamination problem.  *Id.*  Plaintiff responds by stating that WSDOT has not shown that other parties were the sole cause of the releases, and that WSDOT did not act with due care.  Dkt. 127, p. 10-12.

In *Castaic*, *supra*, the court examined whether there was a causation standard that applied to 42 U.S.C. § 9607(b)(3).  Specifically, the court examined whether there was a causation standard that applied to the term "caused solely by" in § 9607(b)(3).  *Castaic*, 272 F.Supp.2d at 1079-82.  The court quoted the causation standard in *Lincoln Properties, Ltd. V. Higgins*, 823 F.Supp. 1528 (E.D. Cal. 1992) as follows:

> [T]he court holds that "caused solely by," as used in CERCLA, incorporates the concept of proximate or legal cause.  If the defendant's release was not foreseeable, and if its conduct – including acts as well as omissions – was "so indirect and insubstantial" in the chain of events leading to the release, then the defendant's conduct was not the proximate cause of the release and the third party defense may be available.

*Castaic*, 272 F.Supp.2d at 1082.  The *Castaic* court noted that several district courts adopted the causation standard in *Lincoln Properties*, one court adopted a "but for" causation standard, and one court appears to have adopted a combination of both.  *Id*.

The Court need not decide which standard applies in this situation since it appears there would be an issue of fact created under any causation standard.  Defendant has alleged that the PAH contamination in the Thea Foss Waterway could have many sources.  Additionally, there is a question whether any release was foreseeable and if WSDOT's conduct was "indirect and insubstantial."  These issues are for the factfinder to resolve.

For the foregoing reasons, Plaintiff's motion for partial summary judgment as to Defendant's affirmative defense should be denied.

///

## III. ORDER

The Court does hereby find and **ORDER**:

(1)     Plaintiff's Motion for Partial Summary Judgment (Dkt. 111) is **GRANTED IN PART** and **DENIED IN PART** as stated herein;

(2)     The Clerk is directed to send copies of this Order to all counsel of record and any party appearing *pro se* at said party's last known address.

DATED this 17th day of November, 2010.

ROBERT J. BRYAN
United States District Judge

ORDER - 10