UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF TRANSPORTATION,<br><br>Defendant. | CASE NO. C08-5722RJB<br><br>ORDER DENYING MOTION TO ENFORCE DECLARATORY JUDGMENT |

This matter comes before the court on the United States' Motion to Enforce Declaratory Judgment (Dkt. 245). The Court is familiar with the records and files herein, the events of the trial, and documents filed in support of and in opposition to the motion. Neither side has requested oral argument.

Plaintiff brings this motion as a "subsequent action . . . to recover further response costs" pursuant to 42 U.S.C. § 9613 (g)(2) and the Amended Judgment entered herein on April 8, 2011 (Dkt. 224), as corrected by Docket Numbers 225 and 230. Plaintiff seeks Judgment for additional response costs of $3,504,177.98 plus interest. That sum includes costs incurred in

2009, 2010, 2011, and 2012, and includes attorney fees and litigation expenses.  It is important to note that the fees and litigation expenses are sought here as part of response costs, and not as an independent award of fees and litigation expenses.

For the reasons stated herein, the motion will be denied.

## I.  Findings and Judgment

Plaintiff apparently misunderstands the meaning and effect of the Findings of Fact, Conclusions of Law, and Judgments entered in this case.  They were somewhat complex, and are identified and listed in the Court's Memorandum to File Regarding Findings of Fact and Conclusions of Law and Judgments (Dkt 273).

The events relative to this motion occurred as follows:  On March 8, 2011, the court heard argument and entered an Oral Ruling on March 11, 2011.  The Court accepted as findings, in its Oral Ruling (Dkt. 196) made pursuant to FRCP 52, "the Admitted Facts set forth at length in the Pretrial Order (Dkt. 164) in Section III." (Dkt. 196 at page 6, line 19-20.)  That included the following findings at page 11, paragraphs 29 through 32 of the Pretrial Order (Dkt. 164):

> 29. The releases and threatened releases of hazardous substances at the Thea Foss and Wheeler Osgood Waterway Problem Areas caused the United States to incur "response" costs, and continue to cause the United States to incur "response" costs, within the meaning of CERCLA Section 101(25), 42 U.S.C. § 9601(25).
>
> 30. The response actions taken and the response costs incurred by the United States at and in connection with the Thea Foss and Wheeler Osgood Waterway Problem Areas are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.
>
> 31. The United States has incurred $9,343,765 in unreimbursed response costs relating to the Thea Foss and Wheeler Osgood Waterways problem areas within the CB/NT Site. This sum includes: (a) EPA costs in the amount of $8,886,610, which consist of $5,850,763 in costs incurred through September 12, 2009, and $3,035,847 in prejudgment interest accrued through May 5, 2010; and (b) DOJ enforcement costs incurred through August 1, 2009 in the amount of $457,155.
>
> 32. DOJ's costs consist of costs incurred in enforcing EPA's CERCLA cost recovery claims against WSDOT.

As is reflected on Page 21 at lines 2-20 of the March 11, 2011 Oral Ruling (Dkt. 196), the amount of a final judgment for costs was not fixed in the Court's mind, and additional briefing was requested. Also, at page 23, line 8, the Court invited counsel to call additional necessary findings and conclusions to the Court's attention.

Further post trial briefing was provided (See Dkts. 199, 202 & 205), and the Plaintiff submitted a proposed Judgment (Dkt. 199-1) which contained the following language at page 2, lines 3 through 8:

> The United States has incurred at least $9,343,765 in response costs. These costs are the unreimbursed response costs incurred by the United States related to the releases and threatened releases of hazardous substances at the Thea Foss and Wheeler Osgood Waterway Problem Areas within the Commencement Bay Nearshore/Tideflats Superfund Site. They are comprised of costs incurred by U.S. EPA through September 12, 2009, including interest through May 5, 2010 and costs incurred by the Department of Justice through August 1, 2009.

The reference to "at least" $9,343,765.00 did not indicate that there were more response costs to be requested, but only that the maximum the Plaintiff could document and justify was $9,343,765.00. From that briefing, and the Plaintiff's proposed Judgment, the Court concluded that no additional reimbursement for current response costs was being requested by the Plaintiff, and entered the Amended and Supplemental Findings of Fact and Conclusions of Law on April 4, 2011 (Dkt. 210). The relevant additional finding provided "the amount of response costs for which defendant is responsible is $9,343,765.00." That finding was intended to, and did, fix the total amount of response costs to the date of the Amended Judgment (Dkt. 224) entered on April 8, 2011. Plaintiff had had the opportunity to request more response costs incurred before April 4, 2011, or to request that the final amount of response costs be left open for additions incurred between the dates set forth in the Agreed Pretrial Order (Dkt. 164) (September 1, 2009, May 5, 2010, and August 1, 2009) and the date of Judgment. Plaintiff did neither.

Plaintiff's statement in its Post Trial Briefing Re: Proposed Judgment and Request for Clarification ( Dkt. 199 at page 4), referring to an earlier motion, was "that was the time for WSDOT to raise any issues it might have regarding the amount and recoverability of the United States' costs." To paraphrase that statement, the additional briefing period was the time for the United States and WSDOT to raise any issues they might have regarding the amount and recoverability of the United States' costs.

A simplification of the foregoing events can be set out as follows: Plaintiff requested response costs of $9,343,765.00 for costs to certain dates. The Court asked if that was all Plaintiff wanted. Plaintiff said yes. The Court gave Plaintiff all it wanted. It can't ask for more now.

It was the court's intent to fix, once and for all, the response costs due to the date of judgment. It did so with the Amended Findings (Dkt. 210) and the Amended Judgment (Dkt. 224) was entered. Response costs to the date of judgment were fixed. *Res Judicata*.

## II. CERCLA and Further Response Costs

Notwithstanding the Court's Amended Judgment, the Plaintiff seeks to recover the aforementioned costs as "further response costs" through the enforcement of the Court's declaratory judgment. The language of the Declaratory Judgment provides that "Judgment is hereby further granted in favor of the plaintiff United States of America and against the defendant Washington State Department of Transportation pursuant to 42 U.S.C. 9613(g)(2): The liability of the defendant determined here is binding on any subsequent action or actions to recover further response costs." (Dkt. 225 at page 1, lines 21-24.)

CERCLA's declaratory judgment provision allows a plaintiff to recover "further response costs." 42 U.S.C. § 9613(g)(2). Plaintiff apparently defines "further response costs," as found in

42 U.S.C. § 9613(g)(2) and the Judgment (Dkt. 224), to mean "additional response costs," and interprets that to encompass response costs incurred at any time and not reimbursed.

The weight of authority, however, defines "further response costs" as "future response costs" – meaning unreimbursed response costs incurred after the date of declaratory judgment entered pursuant to 42 U.S.C. § 9613(g)(2) – here April 8, 2011.

The purpose of the declaratory judgment entered pursuant to 42 U.S.C. § 9613(g)(2) is to establish liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. "Therefore, if a plaintiff successfully establishes liability for the response costs sought in the initial cost-recovery action, it is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions." *City of Colton v. American Promotional Events, Inc.-West*, 614 F.3d 998, 1007 (9th Cir. 2010). "In section 113(g)(2), Congress specified a mechanism whereby a declaration of liability for costs already incurred has preclusive effect in future proceedings as to costs yet to be incurred." *Id. See also Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1191 (9th Cir. 2000) (approving CERCLA declaratory relief allocating future costs).

Stated in another fashion, "[t]he purpose of this provision is to avoid the necessity of relitigating issues in subsequent litigation that have been decided in an initial action, seeking contribution of response costs incurred to date." *AlliedSignal, Inc. v. Amcast Intern. Corp.*, 177 F.Supp.2d 713, 757 (S.D. Ohio 2001). The declaratory judgment establishes liability for all response costs incurred after the date of the judgment (post-trial). *Id*.

As the Ninth Circuit explained in *Dant & Russell, Inc. v. Burlington Northern* Railroad 951 F.2d 246, 249–50 (9th Cir.1991), the provisions of § 9613(g)(2) "envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can

1 then go to court and obtain reimbursement for their initial outlays, as well as a declaration that

2 the responsible party will have continuing liability for the cost of finishing the job."

3       The Second Circuit, citing *Dant & Russell,* explains that CERCLA authorizes an initial

4 action for reimbursement for costs incurred in remediation and further permits a declaratory

5 judgment allocating "future response costs" between potentially responsible parties.  *Gussack*

6 *Realty Co. v. Xerox Corp.*, 224 F.3d 85, 91 (2nd Cir. 2000). *See also F.P. Woll & Co. v. Fifth &*

7 *Mitchell Street Corp.*, 326 Fed. Appx. 658, 661 (3d Cir. 2009) (declaratory judgment ensures

8 prompt reimbursement of reasonable response costs incurred in the future); *City of Gary, Ind. v.*

9 *Shafer*, 683 F.Supp.2d 836, 854 (N.D. Ind. 2010) ("Once liability is established under section

10 107(a) of CERCLA, section 113(g) of CERCLA requires entry of a declaratory judgment as to

11 liability for future response costs.").

12       Numerous decisions refer to "further response costs" as "future response costs" for which

13 liability has been determined in declaratory judgment.  *See U.S. v. Hardage*, 982 F.2d 1436,

14 1445 (10th Cir. 1992)( the entry of declaratory judgment under CERCLA § 113(g)(2) on the

15 issue of liability for future response costs is appropriate); *Kelley v. E.I. DuPont de Nemours &*

16 *Co.*, 17 F.3d 836, 844 (6th Cir. 1994)(the fact that future costs are somewhat speculative is no

17 bar to a present declaration of liability); *New York v. Green*, 420 F.3d 99, 111 (2nd Cir. 2005)

18 (same); *Board of County Com'rs of County of La Plata, Colorado v. Brown Group Retail, Inc.*,

19 768 F.Supp.2d 1092 (D. Colo. 2011) (Plaintiff is entitled to entry of declaratory judgment on

20 future response costs that cannot be determined at this stage of remedial action); *Evansville*

21 *Greenway and Remediation Trust v. S. Indiana Gas and Elec. Co., Inc*., 661 F.Supp.2d 989,

22 1010 (S.D. Ind. 2009)("Once liability is established under section 107(a) of CERCLA, section

23

24

113(g) of CERCLA requires entry of a declaratory judgment as to liability for future response costs.").

Indeed, Plaintiff's demand letter to WSDOT referred to the declaratory judgment as for "future costs incurred by the United States at the site." Exhibit 1 to Declaration of Cynthia Ferguson in Support of United States' Motion to Enforce Declaratory Judgment (Dkt. 246).

Plaintiff has not cited, and the Court is unaware of, any cases that have adopted Plaintiff's interpretation of "further response costs" to allow recovery of additional costs incurred in an initial action in which judgment has already been entered.

The statutory framework does not permit a prevailing party to recover, as further response costs, costs incurred prior to the entry of a declaratory judgment. In its motion, Plaintiff has mixed pre-judgment response costs with further, or future, response costs. The Court is unable to segregate the "future costs" from those that are not allowable and thus, no award can be made.

Even if this court's interpretation that "further response costs" means "future response costs" is in error, Plaintiff could not recover here in light of the Findings of Fact and Judgment entered, and the showing made in support of Plaintiff's Motion (Dkt. 245). (*See* Sections I, Findings and Judgment, and III, Reasonableness of Attorneys Fees.)

### III. Reasonableness of Attorneys Fees

Defendant complains that Plaintiff's showing "lacks the documentation necessary to permit the court to determine whether the amount requested is reasonable or appropriate." Defendant WSDOT's Response to United States' Motion to Enforce Declaratory Judgment (Dkt. 255 at 2). The court agrees.

First, a substantial part of Plaintiff's showing has been stricken as improperly submitted as part of its reply (Dkt. 277). The result here, however, would be the same even with the inclusion of that information.

Second, as set forth in *U.S. v Chapman*, 146 F.3d 1166, 1176 (9th Cir. 1998), fees sought as part of response costs are subject to a reasonableness analysis consistent with the standard set forth in *Hensley* [*v Eckerhart*, 461 U.S. 424 (1983)]." The "Hensley standard" is a bit elusive. *Hensley* primarily dealt with the question of fees being reasonable in relation to the results obtained. Secondarily, however, *Hensley* spoke of many other factors involved in determining reasonable fees: experience of counsel, keeping contemporaneous records documenting hours, the hours reasonably expended, enhancement factors, reasonable hourly rates, multiplying reasonable hours by reasonable rates, overstaffing, and "billing judgment."

The *Hensley* fee considerations are not inconsistent with the Ninth Circuit's "*Kerr* Factors" fee considerations found in *Kerr v Screen Extras Guild Inc.,* 526 F.2d 67, 9th Cir. 1975) (*cert. denied 1976)*:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.
>
> *Kerr*, 526 F.2d at 70.

Those factors are consistent with the Washington State Bar Rules of Professional Conduct Rule 1.5, and are the standards used for determining reasonable fees throughout the

Ninth Circuit. *See, for example, Voggenthaler v. Maryland Square LLC*, 2012 WL 5944420 (D. Nev.)(2012).

In *Cunningham v County of Los Angeles*, 879 F.2d 481, (9th Cir. 1989), a civil rights case, Judge Farris tied *Hensley* and *Kerr* together as follows:

> The legislative history of § 1988 does not explain what constitutes a "reasonable" attorney's fee, but it does endorse the multi-factor guidelines developed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). *See also Kerr v Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S. CT. 1726, 48 L.ED.2d 195 (1976). The Supreme Court has interpreted this endorsement of a flexible standard by adopting a two-party test to channel the district court's exercise of discretion. Under this "hybrid approach" to the calculation of a reasonable attorney's fee for the prevailing party, courts must first calculate a lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley*, 461 U.S. at 433, 103 S. CT. at 1939. Next the court may increase or reduce the presumptively reasonable lodestar fee, *see Quesada v Thomason*, 850 F.2d 537, 539 (9th Cir. 1988)(citing *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L.ED.2d 466 (1986)), with reference to the *Johnson/Kerr* factors that have not been subsumed in the lodestar calculation, *see Wood v Sunn*, 865 F.2d 982, 991-92 (9th Cir. 1988)(identify several factors that have been subsumed); *Clark v City of Los Angeles*, 803 F.2d 987, 990 &n.3 (9th Cir. 1986).

Plaintiff's voluminous record and declarations give the court no basis to determine the reasonableness of the fees requested as part of response costs.

## IV.  Federal Rule of Civil Procedure 54

Because the request of the Plaintiff is for response costs, which include fees and litigation expenses, it is not bound by the 14-day rule found in Federal Rule of Civil Procedure 54. This "subsequent action" is timely for a request for further response costs. 42 U.S.C. § 9613(g)(2).

## V.  Laches and Equity

The Plaintiff is correct that laches and other equitable defenses are not available to Defendant. *California ex. Rel California Department of Toxic Substances Control v Neville Chemical Co.*, 358 F.3d 661 (9th Cir. 2004). Nevertheless, all judges want to feel that their legal rulings lead to a just result.

The record here is silent as to any notice, before the demand letter of March 27, 2013 (Exh. 1 to Dkt. 246), of any claim by Plaintiff for additional pre-judgment response costs. Had the WSDOT been aware of such a substantial additional claim, it may well have triggered an appeal of the court's liability finding. It seems inequitable and unfair for Plaintiff to appear to forego any additional pre-judgment claims for response costs, only to spring such claims on the WSDOT years later, after WSDOT has lost the right to appeal liability, and after it has paid all of the response costs claimed to the date of judgment. Fundamental unfairness, however, is not a legal basis justifying denial of Plaintiff's motion.

## VI.  Conclusion

For the foregoing reasons, the United States' Motion to Enforce Declaratory Judgment is hereby **DENIED**. This denial is **without prejudice** to any subsequent action to recover response costs incurred by the United States after April 8, 2011.

**IT IS SO ORDERED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 23rd day of June, 2014.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge